## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Laurice Gilbert, | : | |
| Petitioner, | : | **Case No. 1:11 CV 558-JG** |
| v. | : | **Judge James S. Gwin** |
| | | **Magistrate Judge Vernelis K. Armstrong** |
| Terry Tibbals, Warden, | : | |
| Respondent. | : | **Report and Recommendation** |

### REPORT & RECOMMENDATION

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2., et seq. Petitioner, Laurice Gilbert [hereinafter "Gilbert" or "Petitioner"], challenges the constitutionality of his conviction in the case of State v. Gilbert, Case No. CR 487765. Gilbert filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on March 17, 2011 in the United States District Court for the Northern District of Ohio, Eastern Division (Docket No. 1).

Petitioner challenges his convictions by a Cuyahoga County Jury and sentence of 33 years to life. In addition to reviewing Gilbert's Petition, the Court has reviewed Respondent, Terry Tibbals's ("Respondent"), Return of Writ (Docket No. 9) and the various exhibits attached thereto and Petitioner's Traverse, (Docket No. 14).

For the reasons set forth below, Gilbert's petition should be DENIED.

### Jurisdiction

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the grounds that

1

he or she is in custody in violation of the constitution or laws or treaties of the United States. <u>Leslie v. Randle</u>, 296 F.3d 518, 521 (6th Cir. 2002) (<u>citing</u> 28 U.S.C. § 2254 (Thomson/West 2002)).

In the instant case, Petitioner was convicted in the Cuyahoga County, Ohio, Common Pleas Court.  He is in custody of the Marion Correctional Institution in Mansfield, Ohio.  His claims implicate the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States.  This Court has jurisdiction to address the merits of Petitioner's Writ of Habeas Corpus.

## I. Background

The September, 2006 term of the Cuyahoga County, Ohio grand jury indicted Gilbert (and co-defendant Jamie Byrd) on four counts: (1) Aggravated Murder, R.C. § 2903.01 (A), purposely and with prior calculation and design caused the death of Dontay Minor, (2) Aggravated, Murder R.C. § 2903.01(B), purposely caused the death of Dontay Minor while committing or attempting to commit or while fleeing immediately after committing or attempting to commit Aggravated Robbery; (3) Aggravated Robbery R.C. § 2911.01(A)(1), in attempting to commit a theft offense, under R.C. § 2913.01, or in fleeing immediately after the attempt or offense upon Dontay Minor had a deadly weapon, a firearm/gun, on or about their person or under their control and either displayed the weapon, brandished it, indicated that they possessed it or used it; and (4)  Aggravated Robbery R.C. § 2911.01(A)(3), in attempting or committing a theft offense, or in fleeing immediately after the attempt or offense on Dontay Minor did inflict or attempt to inflict serious physical harm on Dontay Minor.  Each of the four counts included two firearm specifications: 1 year under § R.C. 2941.141, offenders had a firearm on or about their person or under their control while committing the offense; and 3 year under R.C. §

2

2941.145, offenders had a firearm on or about their person or under their control while

committing the offense and displayed, brandished, indicated they possessed the firearm or used it

to facilitate the offense.   (Docket No. 9, Attachment No. 1).

Cuyahoga County Court of Common Pleas appointed counsel to represent Petitioner.

Gilbert entered a plea of not guilty to the indictment.

A jury was empaneled, and trial commenced on August 27, 2007.  (Docket No. 9,

Attachment No. 32, trial transcript).  On September 4, 2007, Gilbert was found guilty as charged.

On September 28, 2007, the trial court sentenced Gilbert to concurrent sentences of thirty years

to life imprisonment on each of the aggravated murder counts and eight years imprisonment on

each of the aggravated robbery counts. In addition, the court ordered Gilbert to serve a term of

three years on the firearm specifications, which were merged for sentencing, to run

consecutively to the base counts, for an aggregate sentence of thirty-three years to life. The

sentencing entry was journalized on October 3, 2007.  (Docket No. 9, Attachments, Exhibit No.

2).

### A.  Facts Incident to the Indictment and Conviction

The facts pertinent to the crimes for which Petitioner was convicted are as stated  by the

Court of Appeals, Eighth Appellate District, Cuyahoga County (Docket No. 9, Attachments,

Exhibit No. 7) are set forth in designated ¶¶ 3 through 12, below.  These facts are presumed

correct, and Petitioner has the "burden of rebutting the presumption of correctness by clear and

convincing evidence.   28 U.S.C. § 2254(e)(1); Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir.

1998).  Other facts of interest not included in the fact summary of the Court of Appeals are set

forth as footnotes.

3

[¶3] The charges stemmed from an incident that occurred on October 11, 2006. On that date, Dontay Minor, the victim, was shot to death while visiting an apartment in Cleveland. The apartment was the home of Davita Moton, who lived there with her five-year-old son and her boyfriend, Alan Davis.[1]

[¶4] That morning, the victim arrived at the apartment and was playing video games with Davis. Moton was also home, but her son was at school. Gilbert arrived a little while later. All of the individuals present were friends.[2]

[¶5] That afternoon, Moton left the apartment to get her son from school. Gilbert also left to pick up another friend, Jamie Byrd. Gilbert eventually returned to Moton's apartment with Byrd. On the way, Gilbert told Byrd that he had to go and pick up his money.[3]

[¶6] When Gilbert and Byrd arrived at the apartment, Davis and the victim were present. Byrd began playing a video game, and Gilbert was having a conversation with the victim.

[¶7] Davis testified that he heard Gilbert say to the victim "cause I need that" and "you can't leave me f****d up like that," and that Gilbert kept saying "just give me my s***." Davis heard the victim say that he didn't have anything and observed the victim take off his shoes and empty his pockets to display that nothing was in them. Davis then heard the victim say, "I see you got your little gun. I don't know if you gonna shoot me or pistol-whip me or whatever you gonna do." When Davis turned to look, he saw that Gilbert was brandishing a gun in the victim's direction. Davis ran to the porch and heard gunshots.

[¶8] Byrd testified that he was playing a video game, that Gilbert and the

---

[1]  The Motion residence was an upstairs apartment (T. 302).  On the day in question Minor came to the apartment at approximately 11:00 a.m. (T. 375-76, 384)

[2]  Gilbert was a friend of Moton, Davis and Minor, although Gilbert was not a daily visitor. Gilbert did visit that day, at approximately 12:30 p.m. (T. 384).  At that time there were no other persons present.  (T. 390).  There were no problems between the four during the time when all were present.  (T. 391).  Gilbert and Minor both complained about their respective utility bills, but this was in the nature of a conversation, described by Moton as "just talking about bills." (T. 392).

[3]  According to her testimony at trial, Moton left the apartment at approximately 3:20 p.m. to pick up her son from school. (T. 392-95). Mr. Gilbert left at the same time. (T. 395). Davis and Minor remained in the apartment. (T. 397). On October 11, 2006 during the day. Byrd had telephoned Gilbert and, at Byrd's request, Gilbert had driven to Byrd's location to give him a ride. (T. 624-26). Gilbert then received a phone call and told Byrd that Gilbert had to go and pick up his money. (T. 627). The two then drove and eventually arrived at the Moton-Davis apartment. (T. 628-30).

victim were having a conversation, that he heard gunshots, that he ran to the porch with Davis, and that he heard more shots. After hearing the door open and close, Byrd ran out of the apartment.

[¶**9**] Davis testified that he saw the victim dragging himself out of the back room and that he, Davis, called 911. Davis testified that he sat with the victim as other people started coming into the apartment. One of the persons who arrived was Carlos Jackson. Davis testified that Carlos Jackson was not previously in the apartment and that he was just looking.

[¶**10**] The victim suffered multiple gunshot wounds and died on the scene. He was found to have approximately $ 2,000 in cash in the seat of his boxer shorts.

[¶**11**] Approximately two hours after the shooting, Gilbert purchased a one-way ticket to Los Angeles. He was apprehended in Los Angeles approximately six months later.

[¶**12**] As part of their investigation, the police performed gunshot residue tests on Davis, Moton, and Jackson. Each tested positive for gunshot residue on the right hand, but not the left. Testimony was presented that this indicated these individuals had either fired a weapon, were close to the discharge of a weapon, or handled a recently fired weapon or touched a surface with primer residue on it. Testimony was also presented that Davis and Jackson were not considered suspects, but that Gilbert and Byrd were considered possible suspects in the case.

(Docket No. 9, Attachments, Exhibit 7, and Trial Transcript as noted)

## B.  Procedural and Appellate History in State Court

### 1.  Direct Appeal to Court of Appeals

Gilbert timely appealed his convictions and sentence to the Eighth District Court of

Appeals, Cuyahoga County. (Docket No. 9, Attachment s, Exhibit No. 3, Case No.

CA07-090615).  Different counsel represented Petitioner on appeal than trial.  Gilbert filed his

brief on June 2, 2008 and raised the following thirteen assignments of error:

**1.** Whether the firearm specifications in Count One are invalid because they fail to allege a mens rea; and because they are pled in the disjunctive and thus fail to ensure that the Grand Jury was in sufficient agreement about the allegations in the case.
**2.** Whether Count Two fails to sufficiently allege either the offense of felony murder or the attendant firearm specifications.
**3.** Whether Count Three fails to sufficiently allege either the offense of aggravated robbery or the attendant firearm specifications.

**4.** Whether Count Four fails to sufficiently allege either the offense of aggravated robbery or the attendant firearm specifications.

**5.** Whether the trial court erred when it permitted the State to present evidence of the investigating officer's opinion as to who perpetrated the crimes.

**6.** Whether the trial court plainly erred when it permitted testimony regarding Mr. Gilbert's post-arrest silence.

**7.** Whether there is sufficient evidence of prior calculation and design to sustain a convictions for aggravated murder in Count One.

**8.** Whether there is sufficient evidence of aggravated robbery to sustain the convictions in Counts Two through Four respectively.

**9.** Whether the convictions are against the manifest weight of the evidence.

**10.** Whether the prosecution violated Mr. Gilbert's constitutional rights under Article I, Section 10 of the Ohio Constitution, the Fifth Amendment to the United States Constitution and the due process clause of the Fourteenth Amendment to the United States Constitution when it engaged in improper closing argument.

**11.** Whether the trial court's jury instructions were erroneous because they failed to adequately instruct the jury on specific unanimity and the <u>mens</u> <u>rea</u> attendant to each count.

**12.** Whether by virtue of their relationship to each other as lesser included offenses or allied offense, the convictions must merge into a single conviction for aggravated murder.

**13.** Whether Mr. Gilbert received ineffective assistance of counsel.

(Docket No. 9, Attachments, Exhibit No. 4).

The State filed a brief in response, (Docket No. 9, Attachments, Exhibit No.5), and

Gilbert subsequently filed a notice of supplemental authority. (Docket No. 9, Attachments,

Exhibit No. 6).

On February 17, 2009, the Court of Appeals affirmed the convictions on Counts One,

Two and Three, but found that Gilbert's conviction for aggravated robbery in Count Four and the

specifications related to it needed to be reversed due to a defective indictment. Accordingly, the

case was remanded for re-sentencing. (Docket No. 9, Attachments, Exhibit No. 7).

## 2.  Continuation of Direct Appeal to Ohio Supreme Court from Court of Appeals

On April 3, 2009, as to the remaining convictions, Gilbert, through counsel, filed a timely

notice of appeal to the Ohio Supreme Court. (Docket No. 9, Attachments, Exhibit No. 8, Case

No. 09-0610).  In his memorandum in support of jurisdiction, Gilbert raised eleven propositions

of law:

> **I.** Recklessness is the level of <u>mens</u> <u>rea</u> required for brandishing, displaying,
> indicating possession, or using a deadly weapon for the crime of aggravated
> robbery, R.C. 2911.01(A)(1).
> **II.** Firearm specifications are not strict liability conditions and require a <u>mens</u> <u>rea</u>
> of recklessness.
> **III.** It is improper for the State to present evidence as to the police identification
> of a defendant as a suspect and the police exclusion of others as suspect.
> **IV.** An indictment that pleads allegations in the disjunctive, thus leaving it
> uncertain as to whether the grand jury agreed upon one or more means of
> committing an offense, violates the right to indictment. When in addition, the petit
> jury is not instructed on the need for specific unanimity, the error is structural.
> **V.** When there is a structural error present pertaining to a count of an indictment
> that is also a predicate for another count, the more-inclusive count is also
> structurally flawed.
> **VI.** The predicate felony that is the basis for a charge of aggravated murder is a
> lesser included offense of the aggravated murder charge.
> **VII.** An attempt to collect a debt which is then followed by an assault does not
> constitute the crime of robbery unless there is evidence that the subsequent assault
> was accompanied by a further attempt to collect the debt.
> **VIII.** Evidence of prior planning to commit an aggravated robbery does not
> constitute "prior calculation and design" for the offense of aggravated murder.
> **IX.** It is plain error for the State to elicit testimony that a criminal defendant
> remained silent after being arrested.
> **X.** A defendant is denied due process under the Fourteenth Amendment when a
> prosecutor improperly argues in closing argument so as to engender sympathy for
> the victim, personally opine about witness credibility, implore the jury to do
> justice as an abstract principle, and ask the jury to draw significance to physical
> characteristics of demonstrative evidence that were not shown to have been
> present at the crime scene.
> **XI.** Counsel is ineffective when counsel fails to object to the admission of
> post-arrest silence, fails to object to deficiencies in the indictment, fails to seek
> specific unanimity via petit jury instructions, and fails to object to pervasively
> improper remarks in closing arguments.

(Docket No. 9, Attachments, Exhibit No. 9).

On April 20, 2009, the State filed a Waiver of Memorandum in Response. (Docket No. 9,

Attachments, Exhibit No.10)[4].

On July 1, 2009, the Ohio Supreme Court accepted the appeal as to Proposition of Law
No. I as to the validity of the firearms specifications and, <u>sua</u> <u>sponte</u>, stayed the case, pending the
decision in Ohio Supreme Court Case No. 08-1725, <u>State v. Lester</u>. (Docket No. 9, Attachments,
Exhibit No.11).  Gilbert filed an application for reconsideration requesting that the court also
accept Propositions of Law Nos. II, as to the sufficiency of Count 2, and VI, as to testimony, re:

---

[4]  **Delayed Petition to Vacate or Set Aside Sentence**
On March 5, 2009, after the Eighth District Court of Appeals issued its ruling but before
Petitioner filed his appeal with the Supreme Court of Ohio, while his direct appeal was pending,
Gilbert, proceeding <u>pro</u> <u>se</u>, filed a delayed petition to vacate or set aside his sentence, setting set
forth the following claim:

> 1. The Defendant was denied effective assistance of trial counsel, in violation of
> the U.S. Constitution, 6th and 14th Amendments and the Ohio Constitution,
> Article I, Sections 10 and 16.

(Docket No. 9, Attachments, Exhibit No16).

In response, the State filed a motion for summary judgment, to which Gilbert filed a
reply/traverse. (Docket No. 9, Attachments, Exhibits 17 and 18). On June 11, 2009, Gilbert filed,
<u>pro</u> <u>se</u>, a Motion to Rule on Previously Filed Petition for Post-Conviction relief. (Docket No. 9,
Attachments, Exhibit No. 19). On October 27, the trial court issued a memorandum of opinion
and order granting the State's motion for summary judgment and dismissing the delayed petition
for post-conviction relief. (Docket No. 9, Attachments, Exhibit No. 20).On November 13, 2009,
Gilbert, <u>pro</u> <u>se</u>, timely filed a Notice of Appeal, on the denial of his petition for post-conviction
relief under Case No. CA09-94252. (Docket No. 9, Attachments, Exhibit No.21).
In his brief, Gilbert asserted a single assignment of error:

> 1. Where Appellant presented sufficient evidence that counsel was inefficient for
> failing to use available witnesses to support Appellant's actual innocence defense,
> the trial court erred by denying Appellant's petition for post-conviction relief.

(Docket No. 9, Attachments, Exhibit No.22).  The State filed a responsive brief on May 26,
2010. (Docket No. 9, Attachments, Exhibit No. 23). On December 16, 2010, the Court of
Appeals affirmed the judgment of the trial court. (Docket No. 9, Attachments, Exhibit No. 24).

post-arrest silence.  (Docket No. 9, Attachments, Exhibit No.12).   The State opposed the motion

for reconsideration. (Docket No. 9, Attachments, Exhibit No.13). On August 28, 2009, the Ohio

Supreme Court denied Gilbert's motion for reconsideration. (Docket No. 9, Attachments, Exhibit

No.14).

On December 19, 2009, the Ohio Supreme Court affirmed the judgment of the court of

appeals as to Propositions of Law I based on the authority of State v. Lester, 123 Ohio St.3d 396,

2009 Ohio 4225m 916 N.E.2d 1038 and remanded the case to the Eighth District Court of

Appeals. (Docket No. 9, Attachments, Exhibit No.15).

### 3.  Re-sentencing

In the meantime (after the December 19, 2009, final ruling by the Ohio Supreme Court

on matters raised in Petitioner's direct appeal and during pendency of the  Gilbert's delayed

petition to vacate or set aside his sentence),  on August 31, 2010, pursuant to the Court of

Appeals February 17, 2009 decision in Case No. CA07-090615, the Cuyahoga Court of Common

Pleas issued a Journal Entry whereby Count Four, (Aggravated Robbery), was vacated and

Counts One and Two (Aggravated Murder, prior calculation and design, Aggravated Murder,

felony murder) were merged for the purpose of sentencing. (Docket No. 9, Attachments, Exhibit

No. 25).

Petitioner did not pursue an appeal of his re-sentencing.[5]

---

[5]  **Motion to Proceed to Final Judgment**
On November 10, 2010, (after the trial court issuing its August 31, 2010, Journal Entry
re-sentencing Petitioner) Gilbert, pro se,   filed a motion to proceed to final judgment, in which
he complained that the Court of Appeals had not complied with the February 5, 2009 order of
remand issued in Case No. CA07-090615. (Docket No. 9, Attachments, Exhibit No.26). In
response, the State filed a brief in opposition stating that Gilbert was, in fact, re-sentenced on
August 31, 2010. (Docket No. 9, Attachments, Exhibit No. 27).  On November 18, 2010 and

## II. Federal Habeas Corpus Claims

### A. Petitioner's Federal Habeas Corpus Claims

Petitioner, through counsel, filed the instant federal habeas petition on March 17,

2011. (Docket No. 1).   His grounds for relief are as follows:

> **Ground One:** With respect to Counts 2 (aggravated felony murder) and 3 (aggravated robbery), Mr. Gilbert was denied due process because he was charged, tried and convicted on the basis that the brandishing of the firearm was a strict liability element when it required a <u>mens</u> <u>rea</u> of "recklessness."
>
> **Ground Two:** With respect to the firearms counts attendant to Counts 1 thorough 3, Mr. Gilbert was charged, tried and convicted on the basis that the brandishing of the firearm was a strict liability element when it required a <u>mens</u> <u>rea</u> of "recklessness." This was a denial of due process.
>
> **Ground Three:** Over objection, one of the investigating officers was allowed to opine that Messrs. Davis and Jackson were not considered suspects by the police but that Gilbert and Byrd were considered suspects, in violation of Mr. Gilbert's due process rights.
>
> **Ground Four:** Mr. Gilbert was denied due process because the disjunctive nature of the indictment in this case does not ensure that the grand jury had a requisite meeting of the minds as to the offense conduct committed, thus denying Mr. Gilbert a State created liberty interest.
>
> **Ground Five:** Mr. Gilbert was denied due process and the right to trial by jury because the disjunctive nature of the indictment in this case, combined with the trial court's failure to specifically instruct the petit jury about a particular unanimity as to the offense conduct, did not ensure the jury agreed on the offense conduct.
>
> **Ground Six:** Count Two (felony murder) was required to be dismissed because Count Four (aggravate robbery) was dismissed on appeal as structurally flawed, and there is no assurance that the petit jury did not use count Four as the predicate for Count Two. Failure to dismiss Count Two denies due process.
>
> **Ground Seven:** The evidence is insufficient to sustain a conviction for aggravated robbery in Count Three and the corresponding aggravated murder in Count Two (which is premised upon the commission of aggravated robbery).

again on December 15, 2010, the trial court overruled Gilbert's motion to proceed to final judgment. (Docket No. 9, Attachments, Exhibit Nos. 28 and 29).  Gilbert appealed the denial of his motion to proceed to final judgment under Case No. CA10-096141. (Docket No. 9, Attachments, Exhibit No. 30). On December 14, 2010, the Court of Appeals dismissed the appeal based on res judicata. (Docket No. 9, Attachments, Exhibit No. 31).

**Ground Eight:** The evidence is insufficient to sustain the conviction in Count One of aggravated murder in violation of R.C. 2903.01(A).

**Ground Nine:** Mr. Gilbert's Fifth Amendment rights were violated by the State's comments on his post-arrest silence.

**Ground Ten:** Mr. Gilbert was denied due process under the Fourteenth Amendment when a prosecutor improperly argued in closing argument so as to engender sympathy for the victim, personally opine about witness credibility, implore the jury to do justice as an abstract principle, and ask the jury to draw significance to physical characteristics of demonstrative evidence that were not shown to have been present at the crime scene.

**Ground Eleven:** Trial counsel was ineffective when counsel failed to object to the admission of post-arrest silence, failed to object to deficiencies in the indictment, failed to seek specific unanimity via petit jury instructions, and failed to object to pervasively improper remarks in closing argument.

## III. Federal Habeas Corpus: General Legal Principals and Standard of Review

### A. Standard of Review

On April 24, 1996, The Antiterrorism and Effective Death Penalty Act of 1996 [hereinafter "AEDPA"] was enacted, amending 28 U.S.C. § 2254. The following year the United States Supreme Court. held that the provisions of the AEDPA apply to habeas corpus petitions filed after that effective date. See Lindh v. Murphy, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). See also Woodford v. Garceau, 538 U.S. 202, 210, 123 S. Ct. 1398, 155 L. Ed. 2d 363 (2003); Barker v. Yukins, 199 F.3d 867, 871 (6th Cir. 1999) ("It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date.").

Petitioner Gilbert filed his § 2254 habeas petition on May 17, 2011. Accordingly, the AEDPA governs this Court's consideration of the instant Petition.

Section 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

11

adjudication of the claim . .

>  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A petitioner's habeas claims shall <u>not</u> be granted unless the petitioner establishes that the state review resulted in a decision that was contrary to clearly established federal law, <u>or</u> involved an unreasonable application of such law, <u>or</u> led to a decision grounded on an unreasonable evaluation of facts as viewed from the perspective of the evidence presented in the state court proceeding. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable--a substantially higher threshold." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (<u>citing</u> <u>Williams v Taylor</u>, 529 U.S. 420 (2000).

**B. Exhaustion**

Under 28 U.S.C. § 2254(b), (c), a state prisoner must exhaust his state remedies before bringing his claim in a federal habeas corpus proceeding.. <u>Rose v. Lundy</u>, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

The exhaustion requirement is satisfied once a state supreme court has provided the convicted defendant an opportunity to review his claims on the merits. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999). A habeas petitioner will have met the exhaustion requirement when the highest court in the state in which the petitioner has been

convicted has had a full and fair opportunity to rule on the claims.  Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994); Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990).  However, if there remains, under state law, a remedy available to the petitioner that the petitioner has not yet pursued, exhaustion has not occurred, and the federal habeas court cannot entertain the merits of the claim. Rust, 17 F.3d at 160.

### C.  Procedural Default

In general, a federal court may not consider "contentions of general law which are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure."  Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  Where a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

An "independent" state procedural rule is one where the state courts'  application of it "must rely in no part on federal law." Fautenberry v. Mitchell,  2001 U.S. Dist. LEXIS 25700, 2001 WL 1763438, at * 24 (S.D. Ohio Dec. 26, 2001) (citing Coleman, 501 U.S. at 732-733).

An "adequate state procedural rule" is one that must  be "firmly established and regularly followed" by the state courts at the time it was applied.  Ford v. Georgia, 498 U.S. 411, 423-24, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991);  Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001).

13

Where a habeas petitioner had failed to present fairly any claims to the state courts -
which the petitioner now presents as claims in his federal habeas petition - and such state claims
have no remaining state remedies, then the petitioner has procedurally defaulted those claims
presented in his habeas petition.  O'Sullivan v. Boerckel, 526 U.S. at 848; Rust, 17 F.3d at 160.

In Maupin v. Smith, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined a three part
test to determine whether a habeas claim has been defaulted because the petitioner failed to
observe a state procedural rule:(1) a state procedural rule exists but petitioner failed to comply;
(2) the state rule is generally enforced; (3) the state rule represents an adequate and independent
state ground foreclosing federal review.  If these three factors are met,  the claim is procedurally
defaulted. See Maupin, 785 F.2d at 138)

When applying Maupin the federal court looks to the most recently explained state court
ruling.  Ylst v. Nunnemaker, 501 U.S. 797, 805, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991);
Combs v. Coyle, 205 F.3d 269, 275 (6th Cir. 2000).On the other hand, if the most recent state
court to have addressed the particular federal claim reached that claim on the merits,  then the
procedural default bar is removed, and a federal habeas court may consider the merits of the
claim. Ylst, 501 U.S. at 801.

### D.  Circumventing Procedural Default: Cause and Prejudice or Miscarriage of Justice

The federal court may disregard the default and consider the claim on the merits if the
petitioner demonstrates that (1) there was a cause that compelled or otherwise led  him not to
follow the state procedural rule and he suffered actual prejudice as a result of the alleged
constitutional error or (2) a fundamental miscarriage of justice would result from a bar on federal
habeas review. Maupin, 785 F.2d at 138; Hutchison v. Bell, 303 F.3d 720, 735 (6th Cir. 2002);

14

Combs, 205 F.3d at 274-275.  Seymour v. Walker, 224 F.3d 542, 550 (6th Cir. 2000) (citing

Wainwright v. Sykes, 433 U.S. 72, 87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)).

### 1.  Cause and Prejudice

To avoid procedural default (and, thus, the bar on federal review) a petitioner can

establish that there was cause, which prevented him from bringing his claim in state court, in two

ways.  The first way the petitioner may establish such cause is to "show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's procedural

rule." Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986); Mohn v.

Bock, 208 F. Supp.2d 796, 801 (E.D. Mich., 2002). Objective impediments include, e.g., an

unavailable claim, or interference by officials  that made compliance impracticable. Murray, 477

U.S. at 488; Mohn, 208 F. Supp.2d at 801.  The second way to show that there was a cause that

led to not raising the claim in state court is to show that ineffective assistance of counsel, of

constitutionally cognizable proportions,  led to the claim not being raised.  Murray, 477 U.S. at

488-489; Rust, 17 F.3d at 161; Mohn, 208 F. Supp.2d at 804.[6]

To establish the prejudice component of the cause and prejudice requirement for

circumventing procedural default,  a petitioner must demonstrate that the claim that he failed to

raise in the state court due to cause resulted in a constitutional error that "worked to his actual

---

[6]  Regarding this second (i.e., ineffective assistance of counsel) way of showing "cause"
for the default, that ineffective assistance claim must itself be presented as an independent claim
to the state courts before it may be used to establish cause to defeat procedural default during
habeas review.  Murray, 477 U.S. at 488-489.  If the ineffective assistance claim is not presented
to the state courts in the manner required by state law requires, that claim is itself procedurally
defaulted.  Edwards v. Carpenter, 529 U.S. 446, 452-53, 120 S. Ct. 1587, 146 L. Ed. 2d 518
(2000).

and substantial disadvantage." Perkins v. LeCureux, 58 F.3d 214, 219 (6th Cir. 1995) (quoting

United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). However,

"[w]hen a petitioner fails to establish cause to excuse a procedural default, a court does not need

to address the issue of prejudice." Simpson v. Jones, 238 F.3d 399, 409 (6th Cir. 2000).

### 2.  Miscarriage of Justice: Actual Innocence

The cause the cause and prejudice standard is not a perfect safeguard against fundamental

miscarriages of justice.  Accordingly,  the Supreme Court has acknowledged an additional, albeit

limited and narrow, criterion to the cause and prejudice requirement for circumventing

procedural default.  This additional exception occurs where a constitutional violation during the

state court proceeding  has "probably resulted" in the conviction of a petitioner who is "actually

innocent" of the substantive offense.  Dretke v. Haley, 541 U.S. 386, 392, 124 S. Ct. 1847, 158

L. Ed. 2d 659 (2004)(citing Murray, 477 U.S. at 495-96).  In this instance the petitioner must

show "'by clear and convincing evidence that, but for constitutional error, no reasonable juror

would have found the petitioner eligible for the death penalty under the applicable state law.'" Id.

(quoting Sawyer v. Whitley, 505 U.S. 333, 336, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992)).

### E.  Statute of Limitations

A federal habeas petition challenging a state court conviction  must be filed within one

year after the conviction becomes final pursuant to 28 U.S.C. §2244.(d).  The statute of

limitations begins to run when the petitioner's conviction becomes final and it expires one year

after that, absent any tolling actions.  The limitations period tolls during the pendency of a

properly filed application for state post-conviction relief or other collateral relief with respect to

the pertinent judgment or claims. 28 U.S.C. § 2244(d)(2).

16

**IV.  Discussion of Current Case, Analysis of Grounds for Relief**

    **A.  Statute of Limitations in Current Case**

Gilbert was re-sentenced on August 31, 2010. (Docket No. 9, Attachments, Exhibit No. 25).   He did not appeal his re-sentencing to the Eighth District Court of Appeals.   A notice of appeal must be filed within thirty days of the judgment or order being appealed.  See Rule 4(A) of Ohio's Rules of Appellate Procedures   Therefore, his conviction became final 30 days later, on September 30, 2010.  The statute of limitations began running on October 1, 2010.  Under AEDPA Petitioner had one year from that date to file a habeas petition.  Therefore, Petitioner's deadline for filing his habeas corpus petition was September 30, 2011.  Gilbert filed his petition on March 17, 2011, well within the limitations period.

    **B.  Analysis of Grounds for Relief**

**GROUND ONE**

With respect to Counts 2 (aggravated felony murder) and 3 (aggravated robbery), Mr. Gilbert was denied due process because he was charged, tried and convicted on the basis that the brandishing of the firearm was a strict liability element when it required a mens rea of "recklessness."

As discussed, above, procedural default occurs when the petitioner fails to fairly present his federal constitutional claim to the state courts in the manner required by state law. Wainwright, 433 U.S. 72, 86-87 (1977); Engle v. Isaac, 456 U.S. 107 (1982).  The failure to present a claim constitutes a waiver of the argument, unless the petitioner can present cause for the default and actual prejudice from the constitutional error. Murray v. Carrier, 477 U.S. 478, 485 (1986); Sawyer v. Whitley, 505 U.S. 333, 338 (1992).

Grounds One is defaulted due to Gilbert's failure to object to this alleged errors at trial.

The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes a

regularly-enforced, adequate and independent state ground that bars federal habeas review (absent a showing of cause and prejudice). Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001), citing Scott v. Mitchell, 209 F.3d 854 (6th Cir. 2000) and Engle v. Isaac, 456 U. S. 107 (1982).

Plain error review by a state appellate court does not open a claim to consideration on federal habeas when the state court rests its decision on a procedural bar. Scott v. Mitchell, 209 F.3d 854 (6th Cir. 2000) (quoting Harris v. Reed, 489 U.S. 255, 257 (1989));  Gulertekin v. Timmerman-Cooper, 340 F.3d 415, 424 (6th Cir. 2003); Seymour v. Walker, 224 F.3d 542, 557 (6th Cir. 2000); Paprocki v. Foltz, 869 F.2d 281, 284-85 (6th Cir. 1989).

The state appellate court, on direct appeal, reviewed the claims related to Ground One, for plain error. (Exhibit 7, pp. 4-5, 7, 9-10).  Therefore, these arguments are defaulted – although the state appellate court addressed these claims on the merits, plain error review does not cure the default.

Ground One: argument for cause and prejudice – the indictment does not have to specify the mens rea element with respect to the gun elements, and "recklessness" is not the correct mens rea that applies. Trial counsel was not ineffective for not raising an objection.

Ground One is also analyzed under a claim of ineffective assistance of trial counsel for cause and prejudice, as Grounds One was defaulted.   See, discussion of Ground Eleven, infra.

Gilbert argues in Ground One that he was denied due process because he was convicted of aggravated murder (felony murder) under count two, and aggravated robbery under count three without the mens rea of recklessness, which appeared neither in the indictment, nor the jury instructions.

An argument based on a defective indictment, without asserting more, is generally not

18

cognizable in a federal habeas corpus action. "It is also well settled in this Circuit that the Constitution does not require any particular state indictment rule. In fact, it does not require an indictment at all if sufficient notice of the charges is given in some other manner." Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984). All that is required of the State is "that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." Koontz, 731 F.2d at 369. "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review. Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986)." Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002).

The Ohio Supreme Court has recognized that mens rea is not required for the possession or control of a deadly weapon by a defendant in committing a robbery. State v. Lester, 123 Ohio St. 3d 396, 402, 916 N.E.2d 1038 (2009). Further, the court elaborated that by not specifying a mens rea in a statute, the purpose to impose strict liability as to the element of displaying, brandishing, indicating possession of, or using a deadly weapon, was plainly indicated by the state legislature. Id. at, 403. It was also held in State v. Smith, 2nd Ohio App. Dist. Nos. 21463, 22334, 2008 Ohio App. LEXIS 5292 (2008) at **29, that aggravated robbery was a strict liability crime (citing State v. Wharf, 86 Ohio St. 3d 375, 715 N.E. 2d 172 (1999)). Since the State of Ohio, through the Ohio Supreme Court, determined that strict liability is the prescribed mens rea element for the weapon component of aggravated robbery, Gilbert's argument holds little weight.

Petitioner's Ground One is denied.

**GROUND TWO**

With respect to the firearms counts attendant to Counts 1 thorough 3, Mr. Gilbert was charged, tried and convicted on the basis that the brandishing of the firearm was a strict liability element

19

when it required a <u>mens</u> <u>rea</u> of "recklessness." This was a denial of due process.

This Court finds that Petitioner procedurally defaulted on Ground Two due to Petitioner's failure to present this claim to the Ohio Supreme Court.  This Court also finds that Petitioner procedurally defaulted on Ground Two due to his failure to object to these alleged errors at trial.  See, discussion of procedural default, above.

Also, regarding Ground Two: Argument for cause and prejudice – the indictment does not have to specify the <u>mens</u> <u>rea</u> element with respect to the gun elements, and "recklessness" is not the correct <u>mens</u> <u>rea</u> that applies. Trial counsel was not ineffective for not raising an objection.  See, discussion, regarding cause and prejudice in this Court's analysis of this issue in Ground One, above.

Petitioner's arguments, in support of Ground Two are, functionally identical to his argument in Ground One, above,  regarding the firearm specifications for all charges that carried firearms specifications.  An argument based on a defective indictment, without asserting more, is generally not cognizable in a federal habeas corpus action. <u>See</u>, this Court's discussion of similar argument by Petitioner in Ground One, above.

As to the ineffective assistance of council Ground, <u>see</u> discussion of Ground One, <u>supra</u>, and Ground Eleven, <u>infra</u>.  Petitioner's Ground Two is denied.

## GROUND THREE

Over objection, one of the investigating officers was allowed to opine that Messrs. Davis and Jackson were not considered suspects by the police but that Gilbert and Byrd were considered suspects, in violation of Mr. Gilbert's due process rights.

Respondent asserts that Ground Three is defaulted as this claim was never presented to the state courts.  This Court agrees, see analysis of procedural default in this Court's discussion

20

of Ground One, above.

Additionally, the evidentiary ruling, which allowed the admission of a police detective's statement that Petitioner, the suspect of a murder investigation, did not deny Petitioner his due process rights.

Generally, claims such as this are not cognizable for review, as evidentiary rulings are based on state law. Federal habeas review of state court evidentiary rulings is extremely limited. Waters v. Kassulke, 916 F.2d 329, 335 (6th Cir. 1990). Evidentiary questions generally do not rise to a constitutional level unless the error was so prejudicial as to deprive a defendant of a fundamentally fair trial, thereby violating due process. Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988); see also Walker v. Engle, 703 F.2d 959, 962 (6th Cir. 1983). A claim that the state trial court erred in the application of state law, specifically in a ruling on the admissibility of evidence, does not, standing alone, state a cognizable claim for habeas relief.

Petitioner claims that Detective Ignatius Sowa gave impermissible opinion testimony by stating that Gilbert and Byrd were suspects. In Cooper v. Sowders, 837 F.2d 285, 285, 287-88 (6th Cir. 1988), a pre-AEDPA case in which the federal court was not required to give deference to the state appellate court's opinion, the Sixth Circuit held that the trial was rendered fundamentally unfair when a police witness testified to the ultimate issue of fact as to whether the evidence revealed that the defendant was guilty, the trial judge referred to him as an expert witness, and another witness vouched for his credibility. In Mays v. Chandler, No. 07-6315, 2009 U.S. App. Lexis 18774, at **26-27 (6th Cir. 2009) (unpublished), an AEDPA case, the Sixth Circuit found no due process violation as to the statements of a detective on whether he believed the defendant was telling the truth, and whether he believed an eyewitness's version of

21

events.

Here, unlike <u>Cooper</u>, no due process violation occurred. Detective Sowa's statement that he considered Petitioner and Byrd suspects was made in the context of how his investigation proceeded. He was not considered an expert witness, his credibility was not bolstered, and most importantly, he gave no opinion as to the ultimate issue of fact, whether he thought Gilbert was guilty of the crimes.  The context of Detective Sowa's statement was made in the following manner. Sowa was testifying to how witnesses were questioned and evidence was gathered after the shooting. Sowa first testified to speaking with Carlos Jackson, in which the police asked him questions, and conducted a gunshot residue test on him. (Tr. Vol. IV, pp. 929-30). Over Gilbert's objection, Sowa stated that Jackson was not considered a suspect. <u>Id</u>. at 930-31. Sowa then testified that other witnesses, Alan Davis and Davita Moton, received gunshot residue tests. <u>Id</u>. at 931.  Sowa then stated that he took a written statement from Davis. Id. at 931-32.

> Q. All right. Now, this is -you have two kinds of statement forms in your office, homicide office?
> A. Yes, we do.
> Q. Describe that for us.
> A. The first is this type (indicating). This is a witness statement. The second one is very similar, except there's another subsection that advises you of your constitutional rights, and then there are spaces for you to acknowledge that you have been informed of your rights, and that ask you if you'd like to talk to us. You have to answer that, yes, you would like to talk to us. And then you sign your name. And then you would take a statement. And then you would sign it at the end saying, asking you if it's the truth. You have to say yes or no, and sign your name.
> Q. All right. This statement, 90 or Exhibit 90 is what kind of statement? A witness statement, or suspect statement?
> A. This is a witness statement.
> Q . All right. So Alan Davis was not a suspect in this homicide?
> A. No.
> Q. And after talking with Alan Davis, did you have then suspects possible suspects –in this case?
> A. Yes.

22

Q. Who was that?
MR. BUCKLEY: Objection.
MR. MORGAN: Objection.
THE COURT: Overruled.
A. Laurice Gilbert and Jaimie Byrd.
Q. All right. Now, you got two names, Laurice Gilbert and Jaimie Byrd. Does someone start looking for them?
A. Yes.
Q. How was that done?
A. The following day, I consulted with an assistant city prosecuting attorney, and in this case, it was Brian Fritz. He reviewed the facts of this case, and issued warrants against Laurice Gilbert and Jaimie Byrd.

(Tr. Vol. IV, pp 932-34).

In context, the detective did not provide impermissible opinion testimony, but a description of how his course of investigation proceeded from one witness to the next. That Gilbert was a suspect in the case is not surprising, and would not have affected the jury's verdict, seeing as he was already on trial for aggravated murder and aggravated robbery. The detective was not asked to opine on whether he thought Gilbert was guilty. This fleeting reference can hardly qualify as a due process violation that rendered Gilbert's trial fundamentally unfair. The state appellate court properly denied this claim.  Petitioner's Ground Three is denied.

**GROUND FOUR**

Mr. Gilbert was denied due process because the disjunctive nature of the indictment in this case does not ensure that the grand jury had a requisite meeting of the minds as to the offense conduct committed, thus denying Mr. Gilbert a State created liberty interest.

A defendant is denied due process when the fairness of his conviction is undercut by the ability of a jury to convict without a sufficient meeting of the minds regarding the offense conduct. See, Richardson v. United States, 526 U.S. 813 (1999), citing Schad v. Arizona, 501 U.S. 624 (1991).

Petitioner presents the following argument: three counts of conviction, specifically, One,

23

Two and Three, each alleged (either in the body of the count, the firearm specification, or both) that the offenses could be committed in a myriad of different ways.  The jury was instructed that it simply had to find one of the various means of offense conduct – without being instructed that the jurors needed to agree on that particular means.

Thus, for example, according to Petitioner, in Count Two, the Petitioner was charged with having caused the death of Minor either while attempting to commit aggravated robbery, while committing aggravated robbery, or while fleeing after either committing or attempting to commit aggravated robbery.  Additionally, aggravated robbery was explained under two independent theories, as set forth in Counts Three (theft, attempted theft or fleeing after theft or attempted theft, while using displaying or brandishing a deadly weapon), and Four (theft, attempted theft or fleeing after theft or attempted theft, and inflicting or attempting to inflict serious physical harm).

Petitioner asserts that while the body of Count Two offers the starkest example of duplicity, a similar defect plagues all counts with firearms specifications.  In each firearm specification, the defendant is charged with having committed the specification in one of a variety of ways – either the firearm was about his person or under his control (One year specification); or either Gilbert displayed or brandished or indicated that he possessed the firearm or actually used it (Three year specification).  Finally, Plaintiff avers that Count Three was similarly duplicitous.[7]

---

[7]  For example, the defendant could have been attempting to commit a theft or committing a theft or fleeing after having committed a theft, when he had a firearm on his person or about his person or under his control, and either displayed the weapon, or brandished it or indicated that he possessed it or used it.

24

Petitioner asserts that in each case, proper jury instructions – which were never requested – would have cured the problem at the jury deliberation stage. Petitioner argues that had counsel made such a request, State law would have required that a specific instruction been given. In State v. Johnson (1989), 46 Ohio St.3d 96, 104-05 (per curiam), the Ohio Supreme Court recognized that, when a "single count can be divided into two or more 'distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict." Id. at 104.

For cause for the default of Ground Four Petitioner argues that trial counsel was ineffective for not objecting to the disjunctive language of the indictment, as well as the jury instructions.  See, discussion of Ground Four regarding cause and prejudice arising from alleged ineffective assistance of counsel in this Court's discussion of Ground Eleven, below.

No prejudice resulted. As Ohio law would not have supported the objection, Petitioner cannot establish prejudice from an unlikely possibility that the trial court would have granted his objections to the indictment. Even if it did, Petitioner does not establish which way he would have chosen to limit the wording of the charges, and that if he did, the jury would not have found him guilty of aggravated murder, aggravated robbery, or the firearm specifications. As stated elsewhere in this Report and Recommendation, subsequent claims regarding the sufficiency of the evidence, sufficient evidence existed to allow a rational fact finder to find him guilty on the counts. The state appellate court, therefore, did not unreasonably apply clearly-established federal law in rejecting Petitioner's claims with respect to Grounds Four.  Cause and prejudice has not been established, and this claim is defaulted.  See, Discussion of Ground Eleven, infra.

25

Petitioner's Ground Four is denied.

## GROUND FIVE

Mr. Gilbert was denied due process and the right to trial by jury because the disjunctive nature of the indictment in this case, combined with the trial court's failure to specifically instruct the petit jury about a particular unanimity as to the offense conduct, did not ensure the jury agreed on the offense conduct.

As Petitioner's Ground Four and Ground Five bear a significant degree of similarity, though are not identical, this Court's preliminary discussion of Petitioner's assertions has been set forth in greater detail in its discussion of Petitioner's Ground Four, supra.)

Respondent argues as to Ground Five Argument for cause and prejudice – trial counsel was not ineffective for not challenging the disjunctive nature of the indictment and the jury instructions.  For cause for the default of Ground Four, Petitioner argues that trial counsel was ineffective for not objecting to the disjunctive language of the indictment, as well as the jury instructions. In his assignments of error before the state appellate court, Petitioner argued that the disjunctive nature of the aggravated murder charge of Count One denied him due process. Ground Five alleges the same, but also applies the argument with respect to the jury instructions.

As Ohio law would not have supported the objection, Petitioner cannot establish prejudice from an unlikely possibility that the trial court would have granted his objections to the indictment. Even if it did, Petitioner does not establish which way he would have chosen to limit the wording of the charges, and that if he did, the jury would not have found him guilty of aggravated murder, aggravated robbery, or the firearm specifications. As stated in subsequent claims in this Return regarding the sufficiency of the evidence, sufficient evidence existed to allow a rational fact finder to find him guilty on the counts. The state appellate court, therefore, did not unreasonably apply clearly-established federal law in rejecting Gilbert's claims with

respect to Ground Five, and the ineffective assistance of trial counsel claim of Ground Eleven.

Cause and prejudice has not been established, and these claims are defaulted.  <u>See</u>, discussion of

Ground Eleven, <u>infra</u>.  Petitioner's Ground Five is denied.

**GROUND SIX**

Count Two (felony murder) was required to be dismissed because Count Four (aggravated robbery) was dismissed on appeal as structurally flawed, and there is no assurance that the petit jury did not use count Four as the predicate for Count Two. Failure to dismiss Count Two denies due process.

Petitioner asserts that because the aggravated felony murder allegation in Count Two was

premised on "Aggravated Robbery," it is unknown whether the jury believed it was premised on

the aggravated robbery allegation in Count Three or in Count Four. Count Four was dismissed

by the Eighth District Court of Appeals, because it was structurally flawed – including by virtue

of the failure of the jury to be aware of the <u>mens</u> <u>rea</u> of recklessness attendant to that count.

Differing theories for satisfying the element do not have to be disclosed in the

indictment.  The state appellate court dismissed Gilbert's conviction for count four, aggravated

robbery under R.C. 2911.01(A)(3). This dismissal was based on the governing precedent at the

time of Gilbert's appeal, <u>State v. Colon</u>, 18 Ohio St.3d 26, 2008- Ohio-1624, (2008) ("<u>Colon</u> I"),

which held that with respect to absence of the <u>mens</u> <u>rea</u> element for the crime of robbery in the

indictment, an appellant does not waive his right to challenge its defectiveness if he did not

challenge it at trial. Under the law at the time of the appeal, the state appellate court found that

Gilbert's conviction for count four did not comply with <u>Colon</u> for the failure of the indictment to

include a <u>mens</u> <u>rea</u> element with respect to the physical harm element (unlike aggravated robbery

under R.C. 2911.01(A)(1), the charge of count three, which includes the deadly weapon element

that requires no <u>mens rea</u>).[8]

Alternative means that support an element do not have to be specified in the indictment or the jury instructions.  The jury convicted Petitioner under aggravated robbery for count three. Here, there were only two possible underlying offenses for the felony murder conviction of count two. Whether the jury relied on one, both, or some combination of the two, these are alternative means that support the underlying felony element of felony murder.  Petitioner's Ground Six is denied

**GROUND SEVEN**

The evidence is insufficient to sustain a conviction for aggravated robbery in Count Three and the corresponding aggravated murder in Count Two (which is premised upon the commission of aggravated robbery).

The Fifth Amendment to the United States Constitution provides that, "No person shall...be deprived of...liberty...without due process of law." The United States Supreme Court has held that a criminal defendant is denied due process of law when his conviction is not supported by sufficient evidence to prove his guilt of every element of the crime charged beyond a reasonable doubt. In  such a case, due process requires that the defendant's conviction be reversed.  <u>Jackson v. Virginia</u>,  443 U.S. 307 (1979).

In Count One, Petitioner was convicted of aggravated murder in violation of R.C. § 2903.01(A).  In addition to requiring a purposeful killing, § 2903.01 required that Mr. Gilbert kill Minor with "prior calculation and design."

---

[8]  It is worth noting that <u>Colon</u> has recently been overruled by the Ohio Supreme Court. <u>See</u> <u>State v. Horner</u>, __ Ohio St.3d ___, 2010-Ohio-3830, at ¶54 ("[A]n indictment that charges an offense by tracking the language of the criminal statute is not defective for failure to identify a culpable mental state when the statute itself fails to specify a mental state").

> Prior calculation and design sets up a more demanding standard than the old first degree murder standard of "deliberate and premeditated malice." Prior calculation and design requires the accused to have killed purposefully after devising a plan or scheme to kill. There must be some kind of studied analysis with its object being the means by which to kill. State v. Jenkins (1976), 48 Ohio App.2d 99 (footnote omitted). [Prior calculation and design] indicate[s] studied care in planning or analyzing the means of the crime as well as a scheme encompassing the death of the victim. Neither the degree of care nor the length of time . . . are critical factors, in themselves, but they must amount to more than momentary deliberation.

State v. Taylor (1997), 78 Ohio St.3d 15, 19, quoting 1973 Technical Committee Comment to Am. Sub. H.B. No. 511, Legislative Service Commission summary. Accord, State v. Cotton (1978), 56 Ohio St. 2d 8 (prior calculation and design requires "a scheme designed to implement the calculated decision to kill.").

Petitioner in the instant case argues that there is insufficient evidence that he had carefully formulated a scheme to kill Minor. Petitioner argues that, by all accounts, he came back to the apartment to ask for his money. Only when he became frustrated over not receiving his money did he spontaneously and impetuously decide to kill Minor. According to Petitioner it follows that the jury's verdict was based on insufficient evidence.

Petitioner asserts that, in light of the above, the conviction in Count One should be reduced to murder and also that, similarly, the evidence in this case was insufficient to establish aggravated robbery because there was no evidence that Petitioner ever committed or attempted to commit a theft offense.[9]

---

[9]  Petitioner argues that, at its best, for the State, the evidence established that Gilbert and Minor argued over a debt. But Davis, the only witness who testified that Gilbert had a gun, was also clear in stating that the demands for money were all in the nature of steadfast requests – Gilbert insisted that he was owed something but never tried to take anything from Minor. When Gilbert became frustrated with Minor's refusal to give him what he believed he was owed, Gilbert killed Minor (in the light most favorable to the State, although the Petitioner maintains

In a habeas corpus action challenging the sufficiency of the evidence supporting a criminal conviction, the court is bound by "two layers of deference to groups who might view facts differently than [the court] would." Brown v. Konteh, 567 F.3d 191 (6th Cir. 2009).

The first group, to whom deference is due, is the trier of fact. "An appellate court must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Brown, 567 F.3d at 205, citing Jackson v. Virginia, 443 U.S. 307, 319 (1979).

The second layer of deference is due to the state appellate court. This arises after the federal appellate court concludes that no rational trier of fact would have found petitioner guilty beyond a reasonable doubt. Brown, 567 F.3d at 205. On "habeas review, the appellate court must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." Id.

In Ground Seven, Petitioner argues that the State failed to put forth sufficient evidence that he was guilty of the aggravated murder of Dontay Minor in Count One of the Indictment. Aggravated Murder under R.C. 2903.01(A) states, "No person shall purposely, and with prior calculation and design, cause the death of another…." Petitioner specifically challenges the finding that the murder occurred "with prior calculation and design."

In Taylor, supra, the Ohio Supreme Court stated that "prior calculation and design" can be found in situations beyond the "'classic' concept of the 'planned, cold-blooded killing.'" Id. It cited the following prior case law involving more "short-lived, emotional situations" in which

---

that he was not the shooter). (T. 744-54).  Finally, Petitioner opines that while this may establish a retaliatory killing, it does not establish a theft.

evidence supported a finding of "prior calculation and design:"  See, e.g., State v. Claytor

(1991), 61 Ohio St. 3d 234, 574 N.E.2d 472 (encounter with unarmed Veterans Administration

guards and pursuit of wounded guard);  State v. Robbins (1979), 58 Ohio St. 2d 74, 12 Ohio Op.

3d 84, 388 N.E.2d 755 (after argument and assault, defendant retrieved weapon and stabbed

neighbor); State v. Toth (1977), 52 Ohio St. 2d 206, 6 Ohio Op. 3d 461, 371 N.E.2d 831

(accused and victim encountered each other in several bars in one evening).  Id. at 19-20.

A jury could reasonably infer "prior calculation and design from the following facts:

● Petitioner was at the apartment and confirmed that the victim was there before leaving. (Tr. Vol. II, p. 395).  ● Petitioner was gone for under thirty minutes before he returned. Id. at 425.  ● On the way back to the apartment where the victim was located, Gilbert told an acquaintance that he had to go "get his money". (Tr. Vol. III, p. 628).  ● When the altercation began, there were four men in the apartment; Gilbert (sometimes identified as "Reese" in the transcript), Jaimie Byrd, Dontay Minor (sometimes identified as "Tay" in the transcript), and Alan Davis. (Tr. Vol. IV, p. 763).  ● Davis testified that Petitioner stood in front of the only exit for the duration of the altercation and repeatedly demanded "give me my s***." Id. at 751, 746.  ● The victim, Minor, denied having anything, and emptied his pockets and took off his shoes to show Gilbert that he wasn't concealing anything. Id. at 746.  ●Davis saw Petitioner pointing a gun at the victim and heard the victim ask Petitioner if he was going to shoot him. Id. at 748.  ● Davis testified that when he saw that Gilbert had a gun, he fled to the balcony. (Tr. Vol. IV, p. 751).  ● When he fled, this left only the victim and Gilbert in the apartment – Davis testified that after the initial shots, Byrd was with him. Id. at 752.  ● Davis testified that when he reached the balcony he heard between seven to nine shots fired. Id. at 753.  ● When Davis returned inside the apartment from the balcony, Petitioner told Byrd to "come on" and Gilbert and Byrd left the scene of the crime. Id. at 755.  ● Davis recalled that Gilbert had a .380 handgun at the time, and that he had seen Gilbert carry it before. (Tr. Vol. III, p. 749).  ● Byrd was less forthcoming on what occurred, as he would not admit that he saw Petitioner shoot Minor, but he did testify that he heard shooting from inside the apartment. Id. at 716-17.  ● Byrd affirmed his statement to the police that he was in the apartment with Davis, Gilbert, and Minor. Id. at 715.  ● He testified that he told the police that no one else was in the apartment, and no one else could have entered before the shooting.  Id. at 715-16.  ● Byrd also testified that Davis could not have shot Minor. Id. at 716.  ● He testified that he did not shoot Minor. Id. at 718.  ● The State was able to prove through Byrd's testimony, by process of elimination, that Petitioner was the only one who could have shot Minor.  The victim was pronounced dead at the scene of the crime. (Tr. Vol. III, p. 598).  ● Continental Airlines was able to confirm that Petitioner purchased a plane ticket for Los Angeles approximately two hours after the homicide occurred and flew out of Ohio that night. Id. at 536.  ● The Cuyahoga County coroner determined that the victim was shot nine times. (Tr. Vol I, p. 231).  ● It was also determined that some of the bullets entered through the

31

victim's back. Id. at 234.   ● The coroner ruled that homicide was the manner of death. (Tr. Vol. II, p. 259).   ● Further, the coroner stated that the cause of death was multiple gunshot wounds to the trunk. Id. at 258.  ● An autopsy of the victim revealed that the victim was concealing $1,910 in the seat of his pants. (Tr. Vol. II, p. 480).   ● A shell casing for a .380 caliber bullet was found at the scene, which links Davis's testimony to seeing Petitioner with a .380 pistol with the police evidence (Tr. Vol. IV, pp. 841-42).

To tie these facts to the disputed element of "prior calculation and design," as previously stated, the dispute over money provides evidence of a motive, and thus, the motive for the murder. Presuming the evidence in the light most favorable to the prosecution, the prior visit by Gilbert also provides evidence of prior calculation. He left, picked up an acquaintance, and told the acquaintance he had to go pick up money. He returned to the apartment less than 30 minutes later and blocked the only exit when he entered. The court in Taylor found that multiple shots into the back of an already wounded victim, similar to the wounds sustained by Gilbert's victim, was inconsistent with an "instantaneous eruption of events."

Under habeas review, the finding of the jury is entitled to deference. Evidence supported their verdict, and that decision need not be correct, but simply rational. Similarly, the state appellate court's opinion (Exhibit 7) is also entitled to deference, and its decision, which largely interpreted its own law, need not be correct, but simply not unreasonable. The evidence against Gilbert establishes the reasonableness of this decision.  Petitioner's Ground Seven is denied.

**GROUND EIGHT**

The evidence is insufficient to sustain the conviction in Count One of aggravated murder in violation of R.C. 2903.01(A).

This Court's analysis of Ground Eight is identical to its analysis of Petitioner's Ground Seven.  See, discussion of Ground Seven, supra.  As the Court concluded in it's discussion of Ground Seven, under habeas review, the finding of the jury is entitled to deference.  Petitioner's

32

Ground Eight is denied.

**GROUND NINE**

Mr. Gilbert's Fifth Amendment rights were violated by the State's comments on his post-arrest silence.

Petitioner had a constitutional right under the Fifth and Fourteenth Amendments not to give a post-arrest statement to the police.   The State elicited testimony that he remained silent after arrest. (T. 558).   Petitioner argues that this constitutes error under both State and federal law.  See, State v. Leach, 102 Ohio St.3d 135, 2004-Ohio-2147; accord, Doyle v. Ohio (1976), 426 U.S.610.  Petitioner acknowledges that because trial counsel failed to object to this error, a procedural default has occurred, but states that, nonetheless, the above discussion pertains to Ground Eleven, infra, regarding ineffective assistance of counsel.

Regarding Ground Nine: cause and prejudice – the Respondent asserts that the prosecution did not use Petitioner's post-arrest silence to impeach him. Trial counsel was not ineffective for not objecting to the testimony.  Because of this Ground Nine is defaulted.

Due process forbids the State from using a defendant's post-arrest silence at trial to impeach him. Doyle v. Ohio, 426 U.S. 610 (1976). "It would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." Id. at 618. Where the prosecutor does not actually use a defendant's post-arrest silence against him, no Doyle violation occurs.  Greer v. Miller, 483 U.S. 756, 764-65 (1987).

The allegedly offensive testimony occurred in the following exchange between the prosecutor and FBI Agent Michael Depasquale. Depasquale had arrested Gilbert after he escaped to Los Angeles:

Q. Okay. Okay. So going back then, what date did you arrest him?

A. April 19th, 2007.

Q. All right. And just briefly explain to the ladies and gentlemen of the jury how that arrest went down, what steps you took, who was there, how it happened?

A. Like I said before, I believe all of our task force officers were there, except for one individual, and we set up a surveillance, and the subject was observed exiting a tan or a gold Nissan in front of the location, and went inside the house. And we waited for him to come out, and when he came out, we arrested him.

Q. Why did you wait for him to come out of the house to arrest him?

A. Generally, that's how --how we like to operate. We don't like to go in a house, we don't know what's in there.

Q. And you indicated you arrested him. Did you have any problem when you arrested him?

A. No.

Q. What, if anything, did he say?

A. Nothing.

Q. And were you able to confirm his identity as Laurice Gilbert?

A. Yes.

Q. Okay. So he confirmed that he was, in fact, Laurice Gilbert?

(Tr. Vol. III, pp. 557-58).

No further testimony was drawn regarding Petitioner's post-arrest silence. The prosecutor did not use it for argument in closing. Therefore, as Petitioner's silence was not used against him, no due process violation occurred.  It is apparent that the question was drawn out through a course of a narrative describing the arrest. An objection would have been meritless. This fleeting reference could not possibly have had any meaningful impact at trial, so no prejudice resulted under Strickland.  The state appellate court, which applied Doyle, did not unreasonably apply clearly established federal law in determining that no due process violation occurred:

> [P]ost-arrest silence is inherently ambiguous since the silence may reflect only the defendant's  exercise of his constitutional right to remain silent. * * * Any comment which infers that the defendant is guilty because he remained silent subverts the guarantees afforded him by the Fifth Amendment of the Constitution of the United States.

State v. Williams  (1979), 64 Ohio App.2d 271, 276.

Here, the arresting officer merely expressed that there were no problems with the arrest and that Petitioner did not say anything at the time of the arrest. The statement was isolated and did not ref1ect upon Gilbert's desire to exercise his right to remain silent.  Additionally, no further comment was made as to Petitioner's post-arrest silence to suggest that it was an inference of guilt. Accordingly, the prosecutor did not prejudice Petitioner by eliciting this statement, and this Court concludes that this matter does not rise to the level of plain error.

Petitioner,  therefore, cannot demonstrate cause and prejudice to excuse the default of this ground for relief.  Petitioner's Ground Nine is denied.

**GROUND TEN**

Mr. Gilbert was denied due process under the Fourteenth Amendment when a prosecutor improperly argued in closing argument so as to engender sympathy for the victim, personally opine about witness credibility, implore the jury to do justice as an abstract principle, and ask the jury to draw significance to physical characteristics of demonstrative evidence that were not shown to have been present at the crime scene.

Petitioner argues that the prosecution's closing argument unconstitutionally deprived him of a fair trial. See generally, Darden v. Wainwright, 477 U.S. 168 (1986). "[I]mproper insinuations . . . by the prosecution are apt to carry great weight against the accused when they should carry none." State v. Smith, 14 Ohio St.3d 13, 15, citing Berger v. United States, 295 U.S. 78, 88 (1935).

The purportedly improper comments included the following.  The prosecutor attempted to engender sympathy for the victim by referring, over objection, to the victim as having been: "gunned down like he was some animal . . . like he was some pest that they found in the house." (T. 1098).

Such comments may be erroneous. State v. Jackson, Cuyahoga App. No. 88074,

35

2007-Ohio-2494, <u>State v. Hart</u>, Cuyahoga App. No. 79564, 2002-Ohio-1084.

> The relevant inquiry at a criminal trial is not whether the jury is opposed to the acts allegedly committed by the defendant, or whether they are horrified by the results of those acts, but whether the defendant has been shown, beyond a reasonable doubt, to be guilty of doing those acts.

<u>State v. Hart</u> (1994), 94 Ohio App.3d 665, 673.

Petitioner contends that the prosecutor also expressed a personal opinion, over objection that Davis was sincere when he called the police about the fact that his friend had been dying, arguably as evidence that Davis was not the shooter. This purportedly improperly interjected the prosecutor's opinion in the case, both as to Davis' non-involvement and the impact of the killing on Davis. (T. 1039). Petitioner also asserts that the prosecutor argued over objection that justice for the victim required the jury to convict Petitioner. (T. 1118). Petitioner argues that such comments are "senseless and unprofessional." <u>State v. Milam</u>, Cuyahoga App. No. 86268, 2006-Ohio-4742. The prosecutor referred to Petitioner as being "a pretty violent guy" as a means of explaining why prosecution witness Byrd failed to identify Gilbert as the shooter (T. 1104). This, Petitioner asserts, was an improper character attack on Gilbert, who had not placed his character in issue. Evid. R. 404. <u>See</u>, <u>Smith</u>, 14 Ohio St.3d at 14-15.

Similarly, Petitioner asserts that the prosecutor attempted to characterize Petitioner as a street thug by referring to the homicide as "simple street justice." (T. 1115). The prosecutor also asked the jury to consider as corroborative of Davis' testimony that the color of the gun he described matched the color of a .380 caliber handgun that had been admitted solely as a demonstrative model of how the murder weapon functioned. (T. 1034). Petitioner argues that this was well beyond the evidence and thus constituted an improper statement. <u>Jackson</u>.

Unless a particular protection in the Bill of Rights is implicated, an allegation of

36

prosecutorial misconduct is analyzed for a due process violation in a habeas case: "On habeas review, [t]he relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the conviction a denial of due process." <u>Bates v. Bell</u>, 402 F.3d 635, 640-41 (6th Cir. 2005), <u>citing</u> <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 642 (1974). In this Circuit, an allegation of prosecutorial misconduct involves a two-part inquiry – whether the actual statement was improper, and if so, whether it was so flagrant to warrant reversal:

First, this Court determines whether the prosecution's conduct or remarks were improper. If the answer is affirmative, then the court considers four factors to decide whether the improper acts were sufficiently flagrant to warrant reversal: (1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. <u>Id</u>.  <u>Slagle v. Bagley</u>, 457 F.3d 501, 515-16 (6th Cir. 2006).

Before the state appellate court, Petitioner alleged that the prosecutor made the following improper statements during closing argument. Regarding Gilbert's shooting of Minor, the prosecutor stated, "This guy was gunned down like he was some animal --" before Gilbert objected (Tr. Vol. V, p. 1098). The objection was overruled.  Petitioner also objected to the state asserting its opinion regarding the credibility of witness Alan Davis: "He's crying, screaming, don't die on me. So that's not something, you know, that you could manufacture. You know, I would think you could make the rational inference that that's not a manufactured 911 tape; happening contemporaneous with this." <u>Id</u>. at p. 1039. The objection was overruled.  Petitioner objected to the prosecutor's appeals for justice for the victim:

MR. KOSKO: All right. Why is he dead here? He's dead here because he had a large amount of money on him, and he wanted to keep his money, and he didn't want to give it up. And that's why he's lying in a grave with ten bullet holes in him. Because of this guy right here. Didn't want to take no for an answer. All right? You can't do anything for Dontay now. Except one thing. Justice.

Mr. BUCKLEY: Objection, Judge.

The COURT: Overruled.

MR. KOSKO: You know, justice isn't just for criminal defendants. There's just for the State of Ohio. There's justice for a victim lying in the ground.

MR. BUCKLEY: Objection, your Honor.

THE COURT: Overruled.

MR. KOSKO: There's justice for a family that's never gonna see this kid again. And why? Because this guy decides that $1,900 is worth a human life.

(Tr. Vol. V, pp. 1118-19).

Petitioner also objected to the prosecutor's statement that he was "a pretty violent guy." The prosecutor, in explaining Davis's motivation in partially cooperating with the police after the shooting, stated, "What's he gonna do? This is the moral dilemma of the street. But Dontay's dead. He can't do anything for him now. Laurice is still out there. And Laurice is a pretty violent guy. What's he gonna do?" Id. at p. 1104. Gilbert's objection was overruled.

Finally, Petitioner argued in the state appellate court that the prosecutor engaged in misconduct by asking the jury to consider as corroborative to Davis's description of the gun Gilbert used in the shooting as matching the color of a demonstrative handgun used at trial. The prosecutor had argued:

And you know, Alan describes the gun, too, which is interesting. He sees the defendant point the gun at the victim, and he describes it as a .380. And it's so significant that I'm going to read to you from his statement that he now gives. He's picked up again, walking out of this apartment right after this murder occurs, okay? And he tells the police he hasn't had time to confer with anyone he tells the police, 'cause he's taken down to the station, and he's by himself, isolated, and they take a statement.

And what does he say? And this is from his statement that evening. What kind of gun did Reese have, and describe the gun to me. Answer, it was a black .380

38

automatic. It was black, and it had a silver stripe on the gun. It was more grayish than silver. And why is that significant?

Because Nate Willson later testified, and I'll get to his testimony again in a minute, but you remember when Detective Willson -- Sergeant Willson -- came in, and he testifies? He testified that he was able to confirm, not only through the shell casings, but through the pellets that you could get some evidence off of, that a .380 that's manufactured in Mansfield, a High Point .380 semiautomatic was used.

(Tr. Vol. V, pp. 1036-37).

No objection was made by Petitioner, but the state appellate court did not enforce the default, so this issue can also be considered here on the merits.

Regarding whether any of the prosecutor's statements were improper, the state appellate court determined that it was improper for the prosecutor to express his personal opinion. Overall, the court found that the prosecutor's statements did not prejudice Petitioner. Therefore, the state appellate court determined that the prosecutor's statement expressing his opinion of Davis's credibility was improper, but it was silent regarding whether the other remarks were improper.

"Prosecutors can be colorful and creative." State v. Noling, 98 Ohio St.3d 44, 64, 781 N.E.2d 88 (Ohio 2002). "A prosecutor is permitted a certain degree of latitude in summation." United States v. Barker, 553 F.2d 1013, 1025 (6th Cir. 1977).

Petitioner also claims it was impermissible for the prosecutor to argue for justice for the victim. The Sixth Circuit has noted that victim impact evidence, even outside the context of the penalty-phase portion of a capital trial, has been found by courts to be permissible:

The U.S. Supreme Court has held that there is no per se bar to the introduction of victim impact evidence and argument. See Payne v. Tennessee, 501 U.S. 808, 827, 115 L. Ed. 2d 720, 111 S. Ct. 2597 (1991).  See also Black v. Collins, 962 F.2d 394, 408 (5th Cir. 1992) (holding

39

that victim impact argument presented during both guilt and sentencing phase did not render trial fundamentally unfair). Therefore, the prosecutor's appeal to justice for the victim was not improper.

Overall, the state court correctly determined that the prosecutor's conduct did not deny Petitioner a fundamentally fair trial. The evidence against Gilbert was strong, due to the direct evidence from witnesses who testified that he attempted to rob Minor, before shooting him, as well as the evidence of Petitioner's flight. Consequently, the state appellate court did not unreasonably apply clearly-established federal law in ruling that no prosecutorial misconduct occurred. Petitioner's Ground Ten is denied.

**GROUND ELEVEN**

Trial counsel was ineffective when counsel failed to object to the admission of post-arrest silence, failed to object to deficiencies in the indictment, failed to seek specific unanimity via petit jury instructions, and failed to object to pervasively improper remarks in closing argument.

Petitioner argues as to Ground Eleven: Ineffective Assistance, that the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee all criminal defendants the right to effective assistance of counsel. See, Gideon v. Wainwright, 372 U.S. 335 (1963). The right to assistance of counsel assumes that said assistance will be effective. If the assistance is not effective, then the right is of no value. Powell v. Alabama 287 U.S. 45, 53 (1932).

.      The test for determining whether an appellant was denied the effective assistance of counsel is articulated in Strickland v. Washington 466 U.S. 668 at 686 (1984). "[W]hether counsel's conduct so undermined the proper function of adversarial process that the trial cannot be relied on as having produced a just result." Appellant bears the burden of showing that

counsel's performance was deficient and that such deficient performance prejudiced the defendant. <u>Id</u>. at 687.

Petitioner argues that in the instant case, Petitioner's counsel was deficient in failing to object to the admission of evidence discussed in Ground Nine. Counsel was also deficient in failing to object to several of the instances of misconduct during closing argument discussed in Ground Ten. Counsel should also have objected to the deficiencies in the indictment and jury instructions.  Petitioner also states that assuming, arguendo, that this Court were to determine that any of the other issues raised were not fully preserved, then this Court should find that counsel was ineffective because each of the issues raised herein should have been preserved by an effective trial counsel and each of the issues raised herein were outcome determinative.

In order to show that the counsel's performance was deficient, the petitioner must demonstrate that counsel's representation fell below the objective standard of reasonableness under prevailing professional norms. <u>Strickland v. Washington</u>, 466 U.S. 688.  Judicial scrutiny of counsel's performance must be highly deferential; indeed, the court must presume that the challenged action might be considered sound trial strategy. <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 ( 1955). "It is all too tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689.

"The Constitution does not require defense counsel to pursue every trial strategy imaginable, whether likely to bear fruit or not." <u>Perkins v. McKee</u>, No. 09-1250, 2011 U.S. App. Lexis 3054, at *26 (6th Cir. 2011) (unpublished), <u>citing</u> <u>Engle v. Isaac</u>, 456 U.S. 107, 134

41

(1982). Additionally, "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." Harrington, 130 S. Ct. at 789-90, citing Strickland, 466 U.S. at 691.

As to the prejudice component, the Supreme Court held, "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." Strickland, 466 U.S. at 694.  The test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. West v. Seabold, 73 F.3d 81, 84 (6th Cir. 1996), citing Lockhart v. Fretwell, 506 U.S. 364 (1993).

Concerning the aggravated murder and aggravated robbery counts, see discussion, above, a reasonable argument exists that trial counsel was not ineffective, as these claims were meritless under Ohio law. No prejudice resulted – even if a mens rea instruction were given, it is speculative to assume that the jury would not have convicted him. The evidence revealed, as detailed in the subsequent sufficiency-of-the-evidence arguments, that Petitioner acted with a purpose to kill the victim, Dontay Minor.

As to Grounds Four, Five, and Eleven: Argument for cause and prejudice – trial counsel was not ineffective for not challenging the disjunctive nature of the indictment and the jury instructions.

For cause for the default of Grounds Four and Five, Petitioner argues that trial counsel was ineffective for not objecting to the disjunctive language of the indictment, as well as the jury instructions. In his assignments of error before the state appellate court, Petitioner argued that the disjunctive nature of the aggravated murder charge of count one, the aggravated murder

42

charge of count two and the aggravated robbery charge of count three denied him due process. Ground Five alleges the same, but also applies the argument with respect to the jury instructions. These claims are generally not cognizable in federal habeas.

Bearing in mind that this "merits argument" is interpreted under the doubly deferential standard of an ineffective assistance of trial counsel claim under the AEDPA standard of review, a reasonable argument exists that trial counsel was not ineffective for not raising a meritless argument.

As to Grounds Nine, Eleven: Cause and prejudice – the prosecution did not use Petitioner's post-arrest silence to impeach him. Trial counsel was not ineffective for not objecting to the testimony. This argument is defaulted.

## V.  Conclusion

For these reasons the Magistrate recommends that the Court DENY the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: March 27, 2012

## VI. NOTICE

Please take notice that as of this date the Magistrate's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the Local Rules for Northern District of Ohio, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day

period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in United States v. Walters, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In Thomas v. Arn, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.