UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
LAURICE GILBERT,                              :
                                              :      CASE NO.  1:11-cv-558
                        Petitioner,           :
                                              :
v.                                            :      OPINION & ORDER
                                              :      [Resolving Docs. 1, 15, 16]
TERRY TIBBALS, Warden,                        :
                                              :
                        Respondent.           :
                                              :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

      Laurice Gilbert petitions for a writ of habeas corpus under 28 U.S.C. § 2254.[1]  An Ohio

common pleas court found him guilty of two counts of aggravated murder and one count of

aggravated robbery.[2]  He seeks relief from these convictions.

      On March 27, 2012, Magistrate Judge Armstrong filed a Report and Recommendation that

recommended this Court deny Gilbert's petition.[3]  Gilbert objects to the Report and

Recommendation on a number of grounds.[4]  For the reasons that follow, the Court

CONDITIONALLY GRANTS IN PART AND DENIES IN PART Gilbert's petition.  Because the

jury may not have determined Gilbert's guilt on every element of felony murder beyond a reasonable

doubt, the Court vacates Gilbert's guilty verdict on Count Two only.  The Court does not disturb

Gilbert's remaining convictions for aggravated murder and aggravated robbery.

---

    [1][Doc. 1.]

    [2][Doc. 1.]

    [3][Doc. 15.]

    [4][Doc. 18.]

Case No. 1:11-cv-558
Gwin, J.

# I. Background

A Cuyahoga County, Ohio, jury found Gilbert guilty of two counts of aggravated murder and two counts of aggravated robbery, each with firearm specifications.  The Ohio appellate court summarized the case:

> [O]n October 11, 2006 . . . , Dontay Minor, the victim, was shot to death while visiting an apartment in Cleveland.  The apartment was the home of Davita Moton, who lived there with her five-year-old son and her boyfriend, Alan Davis.
>
> {¶ 4} That morning, the victim arrived at the apartment and was playing video games with Davis. Moton was also home, but her son was at school. Gilbert arrived a little while later.  All of the individuals present were friends.
>
> {¶ 5} That afternoon, Moton left the apartment to get her son from school.  Gilbert also left to pick up another friend, Jamie Byrd.  Gilbert eventually returned to Moton's apartment with Byrd.  On the way, Gilbert told Byrd that he had to go and pick up his money.
>
> {¶ 6} When Gilbert and Byrd arrived at the apartment, Davis and the victim were present.  Byrd began playing a video game, and Gilbert was having a conversation with the victim.
>
> {¶ 7} Davis testified that he heard Gilbert say to the victim "cause I need that" and "you can't leave me f* * * *d up like that," and that Gilbert kept saying "just give me my s* * *." Davis heard the victim say that he didn't have anything and observed the victim take off his shoes and empty his pockets to display that nothing was in them. Davis then heard the victim say, "I see you got your little gun. I don't know if you gonna shoot me or pistol-whip me or whatever you gonna do." When Davis turned to look, he saw that Gilbert was brandishing a gun in the victim's direction.  Davis ran to the porch and heard gunshots.
>
> {¶ 8} Byrd testified that he was playing a video game, that Gilbert and the victim were having a conversation, that he heard gunshots, that he ran to the porch with Davis, and that he heard more shots.  After hearing the door open and close, Byrd ran out of the apartment.
>
> {¶ 9} Davis testified that he saw the victim dragging himself out of the back room and that he, Davis, called 911.  Davis testified that he sat with the victim as other people started coming into the apartment.  One of the persons who arrived was Carlos Jackson.  Davis testified that Carlos Jackson was not previously in the

-2-

Case No. 1:11-cv-558
Gwin, J.

apartment and that he was just looking.

{¶ 10} The victim suffered multiple gunshot wounds and died on the scene.  He was found to have approximately $2,000 in cash in the seat of his boxer shorts.

{¶ 11} Approximately two hours after the shooting, Gilbert purchased a one-way ticket to Los Angeles.  He was apprehended in Los Angeles approximately six months later.

{¶ 12} As part of their investigation, the police performed gunshot residue tests on Davis, Moton, and Jackson.  Each tested positive for gunshot residue on the right hand, but not the left.  Testimony was presented that this indicated these individuals had either fired a weapon, were close to the discharge of a weapon, or handled a recently fired weapon or touched a surface with primer residue on it.  Testimony was also presented that Davis and Jackson were not considered suspects, but that Gilbert and Byrd were considered possible suspects in the case.[5]

On direct appeal, the Ohio Court of Appeals reversed Gilbert's conviction on one count of aggravated robbery, Count Four, after finding the trial judge failed to properly instruct the jury on the mens rea required for that count.[6]  The Ohio appellate court affirmed Gilbert's convictions for aggravated murder with prior calculation and design as charged in Count One; affirmed his conviction for aggravated murder involving aggravated robbery (felony murder) as charged in Count Two; and affirmed his conviction for aggravated robbery as charged in Count Three.[7]  The Ohio Supreme Court affirmed.[8]

Gilbert then filed this petition seeking a writ of habeas corpus.  He raises eleven claims for relief.  First, Gilbert says that he "was denied due process because he was charged, tried and convicted on the basis that the brandishing of the firearm was a strict liability element when it

---

[5] *State v. Gilbert*, 2009-Ohio-463 (Ohio Ct. App. Feb. 5, 2009) *aff'd and remanded*, 919 N.E.2d 737 (Ohio 2009).

[6] *Id.*

[7] *Id.*

[8] *Gilbert*, 919 N.E.2d at 737.

Case No. 1:11-cv-558
Gwin, J.

required a mens rea of 'recklessness.'"[9]  Second, Gilbert says that the state courts violated his due

process rights because it treated "brandishing a firearm" as a strict liability element when

"brandishing a firearm" required a mens rea of recklessness.[10]  Third, Gilbert says his due process

rights were violated when an investigating officer testified that he did not consider Davis and

Jackson to be suspects, but considered Gilbert to be a suspect.[11]  Fourth, Gilbert says that the

"disjunctive nature of the indictment" denied him due process.[12]  Fifth, Gilbert says that "the trial

court's failure to specifically instruct the petit jury about a particularized unanimity as to the offense

conduct did not ensure the jury agreed on the offense conduct."[13]  Sixth, Gilbert says that his felony

murder conviction for aggravated murder committed during an aggravated robbery must be reversed

because Count Four's aggravated robbery conviction  may have served as the predicate offense.[14]

Seventh, Gilbert says that there is insufficient evidence to sustain his remaining aggravated robbery

conviction and, by extension, the felony murder charge.[15]  Eighth, Gilbert says that there was

insufficient evidence to sustain his conviction for aggravated murder with prior calculation and

design.[16]  Ninth, Gilbert says that prosecutors violated his Fifth Amendment right to remain silent

---

[9][Doc. 1 at 4.]

[10][Doc. 1 at 4.]

[11][Doc. 1 at 4.]

[12][Doc. 1 at 5.]

[13][Doc. 1 at 5.]

[14][Doc. 1 at 5.]

[15][Doc. 1 at 5.]

[16][Doc. 1 at 5.]

Case No. 1:11-cv-558
Gwin, J.

when it gave testimony that Gilbert did not say anything after being arrested.[17]  Tenth, Gilbert says

the prosecutor's emotional appeal in closing argument denied due process.[18]  Finally, Gilbert says

that he received the ineffective assistance of counsel "when counsel failed to object to the admission

of his post-arrest silence, failed to object to deficiencies in the indictment," failed to seek unanimity

in the jury instructions, and failed to object to the prosecutor's closing argument.[19]

Gilbert's petition was referred to a Magistrate Judge pursuant to Local Rule 72.2(b).  On

May 27, 2012, Magistrate Judge Armstrong issued a Report and Recommendation, which

recommended that Gilbert's petition be denied.[20]  Gilbert now objects to the Magistrate Judge's

determinations on all but his fourth (disjunctive nature of the indictment), fifth (failure to instruct

as to specific unanimity in elements), and ninth (post-arrest silence) grounds.[21]  Gilbert agrees that

this Court may only consider these claims if it finds that Gilbert received ineffective assistance of

counsel.[22]

## II.  Legal Standard

### A.  Federal Magistrates Act

Under the Federal Magistrates Act, a district court only needs to conduct a de novo review

of those portions of a Report and Recommendation to which the parties have made an objection.[23]

---

[17]/[Doc. 1 at 5.]

[18]/[Doc. 1 at 5.]

[19]/[Doc. 1 at 5.]

[20]/[Doc. 15.]

[21]/[Doc. 18.]

[22]/[Doc. 18.]

[23]/28 U.S.C. § 636(b)(1).

-5-

Case No. 1:11-cv-558
Gwin, J.

## B. The Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[24] governs a federal court's review of a state prisoner's habeas corpus petition. AEDPA limits federal review to only those claims in which a petitioner contends that he is in custody in violation of the Constitution, laws, or treaties of the United States.[25] And a federal court cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[26]

To justify any grant of habeas relief, "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."[27] Furthermore,

> under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.[28]

The Sixth Circuit holds that, even if a federal court could determine that a state court incorrectly applied federal law, the court still should not grant relief unless it also finds that the state court

---

[24]/Pub. L. No. 104-132, 110 Stat. 1214 (1996); codified at 28 U.S.C. § 2254.

[25]/28 U.S.C. § 2254(a).

[26]/28 U.S.C. § 2254(d). *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

[27]/*Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

[28]/*Williams*, 529 U.S. at 412-13.

-6-

Case No. 1:11-cv-558
Gwin, J.

ruling was unreasonable.[29]

"A petitioner must fairly present to the state courts either the substance of or the substantial equivalent of the federal claim that he is presenting to a federal habeas court."[30] "To fairly present a claim to a state court a petitioner must assert both the *legal* and factual basis for his or her claim.[31] To determine whether a federal legal claim has been fairly presented to the state court, a federal habeas court considers whether:

> 1) the petitioner phrased the federal claim in terms of the pertinent constitutional law or in terms sufficiently particular to allege a denial of the specific constitutional right in question; 2) the petitioner relied upon federal cases employing the constitutional analysis in question; 3) the petitioner relied upon state cases employing the federal constitutional analysis in question; or 4) the petitioner alleged "facts well within the mainstream of [the pertinent] constitutional law."[32]

Where a petitioner fails to fairly present a federal claim in state court, the petitioner forfeits that claim in later proceedings unless the petition can show both cause for, and prejudice resulting from, the default.[33]

Where the state court did not adjudicate a federal constitutional claim on the merits even though it was fairly presented, AEDPA deference does not apply.[34]  In such cases, a federal court applies the pre-AEDPA standard of review and reviews questions of law de novo and questions of

---

[29]*Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000).

[30]*Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).

[31]*Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

[32]*Hicks*, 377 F.3d at 553 (quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

[33]*See Wainright v. Sykes*, 433 U.S. 72, 87 (1977).

[34]*Evans v. Hudson*, 575 F.3d 560, 564 (6th Cir. 2009); *Brown v. Smith*, 551 F.3d 424, 429 (6th Cir. 2008).

Case No. 1:11-cv-558
Gwin, J.

fact for clear error.[35/]  Nonetheless, "when a state court issues an order that summarily rejects

without discussion all the claims raised by a defendant, including a federal claim . . . the federal

habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the

merits."[36/]  The same rule applies "when the state court addresses some of the claims raised by a

defendant but not a claim that is later raised in a federal habeas proceeding."[37/]

### III.  Analysis

**A. Grounds One and Two: Mens Rea of Recklessness**

With his first and second claims for relief, Gilbert says that he "was denied due process

because he was charged, tried and convicted on the basis that the brandishing of the firearm was a

strict liability element when it required a mens rea of 'recklessness.'"[38/]  He says that Ohio Criminal

Rule 12(C)(2) allows him to bring this claim at any time.[39/]  The Warden responds that Gilbert

procedurally defaulted this claim by failing to raise it before the state courts; that the state appellate

court's review of this claim for plain error does not cure any procedural default, and that Gilbert's

trial counsel was not ineffective for failing to argue this point so as to excuse the procedural

---

[35/]*Evans*, 575 F.3d at 564; *Brown*, 551 F.3d at 430; *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[36/]*Johnson v. Williams*, No. 11-465, 2013 WL 610199, at *3 (2013) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)).

[37/]*Id.*

[38/][Doc. 1 at 4.]  Gilbert apparently agrees that this same rationale should governs his first and second claims for relief.  Indeed, the Court is not sure how Gilbert's second claim for relief differs materially from his first except that Gilbert's second claim for relief alleges that Count One was also defective for failing to include a mens rea of recklessness, while ground one asserts this claim only with respect to Counts Two and Trhee. Indeed Gilbert's traverse says that "for the same reasons set for th above, there was no procedural default" and "the same due process argument set forth in Ground One  . . . is incorporated herein."  [Doc. 14 at 7.]

[39/][Doc. 18 at 1.]

-8-

Case No. 1:11-cv-558
Gwin, J.

default.[40]

The Court does not agree with the Warden's strained reading.  Gilbert has not procedurally defaulted this claim.  The state appellate court evaluated this claim in light of state-law authorities and found that "Gilbert's argument lacks merit."[41]  The Ohio Supreme Court affirmed.[42]  "If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available."[43]  The Court declines the Warden's proposal to assign an overly strained meaning to "merit" review[44]  The Ohio Appellate Court denied relief on the merits.  Having afforded a merits consideration of this claim, the Warden cannot claim the argument was defaulted.

Nonetheless, Gilbert is not entitled to relief.  The Ohio Supreme Court could reasonably find the Constitution does not require some recklessness scienter be shown.  Under AEDPA, Gilbert must show that the Ohio Supreme Court and Ohio appellate court's determinations "w[ere] contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the

---

[40] [Doc. 9 at 14-18.]

[41] *Gilbert*, 2009-Ohio-463 at *2.

[42] *Gilbert*, 919 N.E.2d at 119-20 ("The judgment of the court of appeals is affirmed as to appellant's first assignment of error below (Proposition of Law No. I accepted for review in this court) on the authority of *State v. Lester*, 916 N.E.2d 1038 (Ohio 2009).  The cause is remanded to the court of appeals for further proceedings not inconsistent with *State v. Lester*.").

[43] *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *see also Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007) ("[T]he district court incorrectly determined that habeas claim forty-two was procedurally defaulted, because the state courts adjudicated this claim on the merits on post-conviction review.").

[44] The Warden appears to argue that since the *Colon* cases, *State v. Colon*, 885 N.E.2d 917 (Ohio 2008), 893 N.E.2d 169 (Ohio 2008), dealt with the applicability of harmless error review to constitutional deficiencies, including those in an indictment, the state courts' determinations that *Colon I* is inapplicable to Gilbert's case indicates that the state court applied procedural default and harmless error review.  The text of the state court decision provides no such indication.  Instead, the Court ruled that "[a] firearm specification does not constitute a separate offense and therefore does not impose a culpable mental state." *Gilbert*, 2009-Ohio-463 at *2 (further citation omitted).  This pronouncement attacks not the standard of review but the "merits" of Gilbert's argument.

Case No. 1:11-cv-558
Gwin, J.

Supreme Court of the United States."[45]

For support, Gilbert cites *Morissette v. United States*[46] for the proposition that "due processes prohibits hinging significant criminal punishment on actions that are not accompanied by a criminal scienter."[47] But *Morissette* actually held that the touchstone of a strict liability offense is that the legislature intended that the statute be a strict liability offense.[48] The Ohio Supreme Court interprets Ohio General Assembly legislative intent. The Ohio Supreme Court finds the brandishing firearm specifications are strict liability elements. Given the Ohio Supreme Court's interpretation, this Court cannot grant relief. The Due Process Clause may set some outer bound to what offenses a state may regulate as strict liability offenses. But Gilbert gives no Supreme Court authority limiting that outer bound. And so this Court cannot say that the Ohio Supreme Court was unreasonable when it interpreted Ohio law.

**B. Ground Three: Testimony that Gilbert Was a Suspect.**

With his third argument for relief, Gilbert complains that the investigating officer should not have been permitted to testify that the officer did not consider Davis and Jackson suspects, but did consider Gilbert a suspect. Gilbert says that this testimony violated his due process rights.[49] Responding to this argument, the Warden says that this evidentiary ruling does not raise due process

---

[45] 28 U.S.C. § 2254(d)(1).

[46] 342 U.S. 246 (1952).

[47] [Doc. 14 at 6.]

[48] *See id.* at 258 ("It is a question of legislative intent to be construed by the court.") (quoting *United States v. Balint*, 258 U.S. 250, 252 (1922))

[49] [Doc. 1 at 4]

-10-

Case No. 1:11-cv-558
Gwin, J.

problems.[50] The Magistrate Judge recommended that Gilbert procedurally defaulted this claim and that it is also not cognizable on habeas review.[51]

Gilbert likely defaulted this claim. Before the Ohio appellate court, Gilbert argued that admission of this testimony "denied Mr. Gilbert his Sixth Amendment right to trial as well as Fourteenth Amendment due process."[52] But Gilbert did not raise this claim in his Memorandum in Support of Jurisdiction to the Ohio Supreme Court.[53] To reach the merits of Gilbert's claims, he must show he exhausted available Ohio remedies. Proper exhaustion requires Gilbert present every claim in the federal petition to each level of the state courts, including the highest state court to which Gilbert was entitled to appeal.[54] Gilbert defaulted this claim.

In addition, this Court denies relief on the merits.[55] While the language of the state appellate court's ruling on this argument is ambiguous, the Court must presume that the Ohio Court of Appeals evaluated this claim on the merits, and thus AEDPA deference applies.[56]

Gilbert says that the police officer should not have been permitted to testify that Davis and Jackson were not suspects, despite having been in the vicinity, the investigator was stating his

---

[50][Doc. 9 at 18-21.]

[51][Doc. 15 at 20-23.]

[52][Doc. 9-4 at 20.]

[53][Doc. 9-9.]

[54]*Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012) cert. denied, 133 S. Ct. 876 (2013).

[55]*Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

[56]*See Johnson v. Williams*, No. 11-465, 2013 WL 610199, at *3 (Feb. 20, 2013) (A "federal habeas court must presume (subject to rebuttal) that the federal claim was adjudicated on the merits . . . when the state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas petition."). Gilbert offers no rebuttal.

Case No. 1:11-cv-558
Gwin, J.

opinion about Gilbert's involvement—by virtue of elimination.  This is the essence of the due process violation."[57]  Defining the "essence" of due process is good work if you can get it. Unfortunately for Gilbert, AEDPA only allows this Court to grant relief if the *Supreme Court* has established that such testimony "is the essence of the due process violation."  And Gilbert cites no Supreme Court cases to such effect.

Generally, "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules."[58]  And *Chambers v. Mississippi*, the foundational case in this regard, held that "the exclusion of this critical evidence, coupled with the State's refusal to permit [certain cross examination] denied [the defendant] a trial in accord with traditional and fundamental standards of due process."[59]  By contrast Gilbert's claim is that the state allowed an investigator's statements that certain people were suspects and others were not.  Based on these authorities, the Ohio appellate court could reasonably have concluded that admission of these statements did not violate Gilbert's due process rights.

**C.  Count Six: Due Process for Felony Murder Charge**

With his sixth claim for relief, Gilbert argues that when the Ohio Appellate Court reversed one of the felony robbery convictions, the state appellate court could not approve the felony murder conviction under Ohio R.C. 2903.01(B) because it could not determine whether the reversed robbery conviction had been used to support the aggravated murder penalty. Gilbert says that his aggravated murder conviction in Count Two was required to be dismissed because the appeals court dismissed

---

[57]/[Doc. 14 at 7.]

[58]/*Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983).

[59]/*Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

-12-

Case No. 1:11-cv-558
Gwin, J.

one of the felony convictions the jury could have used to support its finding.  In other words, Gilbert

argues that the error with regard to the aggravated robbery charged in Count Four may have infected

the felony murder conviction in Count Two.  The jury may have used Count Four as the predicate

offense for Count Two.[60/]

In response, the Warden says that the jury also convicted Gilbert of aggravated robbery as

charged in Count Three of the indictment, and this felony robbery conviction supports the felony

murder verdict on Count Two.[61/]

The state appellate court reversed Gilbert's conviction for aggravated robbery charged in

County Four.  The state appellate court found that Ohio Revised Code 2911.01(A)(3), which defines

aggravated robbery, "contains a physical harm element to which a mens rea of recklessness is

applied."[62/]  The state appellate court then said that "there is no evidence that defendant had notice

of the mens rea element of this offense, nor was there any instruction to the jury on the mens rea

element of this offense, nor did the parties discuss or refer to recklessness as being an element to

this aggravated robbery count in closing arguments."[63/]  Accordingly, the state appellate court

reversed Gilbert's conviction on Count Four's aggravated robbery charge.[64/]  Gilbert says that it is

impossible to determine whether the jury used Count Four's aggravated robbery conviction or used

Count Three's aggravated robbery conviction to support the Count Two felony murder conviction.

Generally, the Sixth Amendment and the Due Process Clause entitle "a criminal defendant

---

[60/][Doc 1 at 5.]

[61/][Doc. 9 at 29.]

[62/]*Gilbert*, 2009 Ohio 463 at *5.

[63/]*Id.*

[64/]*Id.*

-13-

Case No. 1:11-cv-558
Gwin, J.

to 'a jury determination that [he] is guilty of every element of the crime with which he is charged,

beyond a reasonable doubt.'"[65]  The trial court instructed the jury that the element of

> [w]hile committing or attempting to commit, or while fleeing immediately after
> committing or attempting to commit means that the death must occur as part of the
> acts leading up to or occurring during or immediately after the commission of the
> aggravated robbery.  And that the death was directly associated with the commission
> or flight immediately after the commission of the aggravated robbery.[66]

The court then explained that "[a]ll the elements fo the offense of aggravated robbery will be

defined for you [the jury] in counts three and four."[67]

Because the jury returned guilty verdicts on Counts Three and Four, it may have found this

"while committing" element present as to aggravated robbery as defined in Count Three or Count

Four or both.  If the jury found the "while committing" element present only as to Count Four, then

the jury could not find Gilbert "guilty of every element of the crime with which he is charged,

beyond a reasonable doubt."  Described otherwise, the Court of Appeals' decision reversing Count

Four means that the conduct associated with Count Four could not be used to support Count Two.

It is impossible to know if the jury used the Count Four conduct.  And, as such, this defect warrants

reversal of Gilbert's conviction on Count Two.

**D.  Ground Seven: Insufficient Evidence as to Count Three's Aggravated Robbery Charge**

Gilbert next says that "[t]he evidence is insufficient to sustain a conviction for aggravated

robbery in Count Three and the corresponding aggravated murder in Count Two (which is premised

---

[65]*Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)) (alteration in *Apprendi*).

[66][Doc. 9-36 at 146.]  The Warden agrees that "the quoted portion represents a single element, identifying various alternative means in which the homicide may occur."  [Doc. 9 at 27.]

[67][Doc. 9-36146.]

Case No. 1:11-cv-558
Gwin, J.

upon the commission of aggravated robbery)."[68]  Gilbert says that "[a]t best for the State, the evidence established that Gilbert and Minor argued over a debt" and that the demands for money were "steadfast requests."[69]

Responding to this argument, the Warden says that the jury and state appellate court determinations to the contrary deserve deference.[70]  The Magistrate Judge recommends that the factual evidence suffices to support the jury and the state appellate court's determinations.[71]

AEDPA requires this Court to "apply two layers of deference in reviewing habeas claims challenging evidentiary sufficiency."[72]

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.  *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).[73]

That is, the Court asks "whether the Ohio Court of Appeals itself was unreasonable in its conclusion

---

[68]/[Doc. 1 at 5.]

[69]/[Doc. 14 at 12-13.]

[70]/[Doc. 9 at 34-35.]

[71]/[Doc. 15 at 30-33.]

[72]/*Moreland v. Bradshaw*, 699 F.3d 908, 916 (6th Cir. 2012).

[73]/*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Case No. 1:11-cv-558
Gwin, J.

that a rational trier of fact could find [Gilbert] guilty beyond a reasonable doubt based upon the evidence introduced at trial."[74]

> The Ohio Court of Appeals determined that
>
> review of the record shows that the victim possessed a large sum of money and that Gilbert shot the victim after he refused to hand it over.  The fact that money was not actually taken was not a necessary element for the aggravated robbery offense.  We find that there was sufficient evidence showing that appellant was committing or attempting to commit a theft offense and upon which a rational trier of fact could find the elements of aggravated robbery proved beyond a reasonable doubt..[75]

Basically, Gilbert says that his demand for money at gunpoint cannot be construed as an attempt to steal because Gilbert believed that Minor owed him money.  Gilbert errs.  Certainly, the jury could have accepted Gilbert's argument, but it was not required to accept this argument.  Indeed, it could reasonably infer from Gilbert's use of a gun to demand the money that the money was not rightfully his.  Likely, both the jury and the Ohio appellate court reasoned that Gilbert's use of a firearm to demand money showed that the money was not his.  These determinations warrant deference.  As such, sufficient evidence supports the jury's finding of aggravated robbery in Count Three.

**E.  Ground Eight: Insufficient Evidence of Prior Calculation and Design**

Gilbert next says that "[t]he evidence is insufficient to sustain the conviction in Count One for aggravated murder" by prior calculation and design.[76]  Responding, the Warden argues that Gilbert entered the residence with a gun and that he shot the victim both in the front and in the

---

[74]/*Id.*

[75]/*Gilbert*, 2009-Ohio-463, at *8*.

[76]/[Doc. 1 at 5.]

-16-

Case No. 1:11-cv-558
Gwin, J.

back—in total nine times—permitted the jury to infer prior calculation and design.[77]/  The

Magistrate Judge carefully considered the evidence presented at trial and recommends that the Ohio

appellate court's finding upholding the jury's verdict was reasonable.[78]/

> The Ohio appellate court determined that
>
> the evidence revealed that Gilbert told Byrd that he had to go pick up his money and that Gilbert returned to Moton's apartment and repeatedly asked the victim to "give me my s* * *."   Gilbert had a gun with him, and after the victim claimed he did not have anything and failed to hand over any money, Gilbert brandished the gun at the victim.  Gilbert did not merely threaten the victim or attempt to injure him with the gun, but rather, he shot the victim multiple times and killed him.  He then went to the airport and purchased a one-way ticket to Los Angeles.  Later, it was determined that the victim in fact had approximately $2,000 on his person.
>
> {¶ 56} We find that the jury could reasonably conclude from this evidence that Gilbert had a plan designed to carry out his calculated decision to kill the victim if the victim did not turn over the money.  Moreover, when we view the evidence in the light most favorable to the state, we hold that it was sufficient to establish beyond a reasonable doubt that Gilbert had committed the offense with prior calculation and design.[79]/

The Court finds this explanation reasonable.  As with Gilbert's other insufficient evidence

claim, the jury was not required to infer that Gilbert had formulated a prior calculation and design

based on Gilbert's arrival at the house with a gun, on Gilbert's repeated demands for the money, or

the multiple gunshots inflicted on the victim.  Nonetheless, the state appellate court was not

unreasonable for determining that a rational juror could do so.

In an insufficient evidence claim, the Court does not weigh conflicting evidence.  Indeed,

the subsequent purchase of a plane ticket or the fact that Gilbert often carried a firearm could imply

---

[77]/[Doc. 9 at 34-35.]

[78]/[Doc. 15 at 31-32.]

[79]/*Gilbert*, 2009-Ohio-463 at *7.

-17-

Case No. 1:11-cv-558
Gwin, J.

that he did not have a prior calculation or design.  But the Court asks only whether a reasonable

juror could find that Gilbert had a prior calculation and design to kill Minor.  The Ohio Court of

Appeals has held that the "'prior calculation and design' requirement under Ohio law was satisfied

where 'the purpose to cause the death was reached by a definite process of reasoning in advance of

the homicide, which process of reasoning must have included a mental plan involving studied

consideration of the method and the instrument with which to cause the death of another.'"[80]  The

jury could have inferred that Gilbert brought the gun to the altercation with Minor with the intent

to kill him if he did not receive money.  This logic is sufficient to uphold the Ohio appellate court's

decision that the jury's verdict was rational.

**F.  Ground Ten: Improper Closing Argument**

Gilbert next says that he "was denied due process under the Fourteenth Amendment when

a prosecutor improperly argued in closing argument so as to engender sympathy for the victim,

personally opine about witness credibility, implore the jury to do justice as an abstract principle, and

ask the jury to draw significance to physical characteristics of demonstrative evidence that were not

shown to have been present at the crime scene..[81]  The Warden says that the remarks were not

improper.[82]

Gilbert particularly objects to six remarks made by the prosecutor during closing argument.

First, Gilbert says that it was improper for the prosecutor to say that the victim "was gunned down

---

[80]/*Goodwin v. Johnson*, 632 F.3d 301, 313 (6th Cir. 2011) (quoting *Zuern v. Tate*, 336 F.3d 478, 482 (6th Cir. 2003)).

[81]/[Doc. 1 at 6.]

[82]/[Doc. 9 at 37.]

Case No. 1:11-cv-558
Gwin, J.

like he was some animal . . . like he was some pest that they found in the house."[83] Second, he

objects that the prosecutor said "[y]ou know, I would think you could make the rational inference

that that's not a manufactured 911 tape; happening contemporaneous with this."[84] He says that this

remark improperly "expressed a personal opinion, over objection that Davis was sincere when he

called the police about the fact that his friend had been dying, arguably as evidence that Davis was

not the shooter."[85] Third, Gilbert says that it was "senseless and unprofessional" for the prosecutor

to say "[y]ou can't do anything for Dontay now.  Except one thing.  Justice. . . . . You know, justice

isn't just for criminal defendants.  There's justice for the State of Ohio.  There's justice for a victim

lying in the ground."[86] Fourth, Gilbert objects that the prosecutor suggested that Jamie Byrd did

not identify the defendant because "Laurice is still out there.  And Laurice is a pretty violent guy."[87]

Fifth, Gilbert objects that the prosecutor "attempted to characterize [him] as a street thug"[88] by

describing the incident as "a planned robbery.  The victim didn't give it up, and he paid the price

for it. Simple street justice."[89] Finally, Gilbert says that the prosecutor improperly "asked the jury

to consider as corroborative of Davis'[sic] testimony that the color of the gun he described matched

the color of a .380 caliber handgun that had been admitted solely as a demonstrative model of how

---

[83] [Doc. 9-36 at 103.]

[84] [Doc. 9-36 at 44.]

[85] [Doc. 14 at 14.]

[86] [Doc. 9-36 at 123-24.]

[87] [Doc. 9-36 at 109.]

[88] [Doc. 14 at 15.]

[89] [Doc. 9-36 at 120.]  Gilbert did not object to this remark at trial , but the state appellate court considered this issue on the merits, removing any obstacle to habeas review.

-19-

Case No. 1:11-cv-558
Gwin, J.

the weapons functioned."[90]

The Magistrate Judge examined these remarks under four-factor test articulated by the Sixth Circuit in *Slagle v. Bagley*.[91]  Gilbert objects that "[t]he R&R failed to analyze, and conclude affirmatively, the question of whether due process was offended because these improper remarks had the tendency to cause the jury to convict of the greater offenses, as opposed to the lesser offense of simple murder."[92]  Since the filing of the Magistrate Judge's Report and Recommendation, the Supreme Court has clarified that such circuit precedent "does not constitute clearly established Federal law, as determined by the Supreme Court,'" for purposes of AEDPA.[93]  The Court consider's Gilbert's objection that the remarks could have improperly misled the jury to convict Gilbert of aggravated murder instead of simple murder in light of the correct legal standard.

The "highly generalized standard for evaluating prosecutorial misconduct set forth in *Darden* [*v. Wainright*]" governs this case.[94]  *Darden* held "that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[95]  The Court in *Darden* considered whether the prosecutor's argument "manipulate[d] or misstate[d] the evidence," whether it "implicate[d] other specific rights of the accused," whether "the objectionable content was invited by or was a response

---

[90][Doc. 14 at 15; Doc. 14 at 42-43.]  This remark was also not the subject of a contemporaneous objection at trial, but, again, the state appellate court considered this issue on the merits, removing any obstacle to habeas review.

[91]457 F.3d 501, 515-16 (6th Cir. 2006).

[92][Doc. 18 at 5.]

[93]*Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting 28 U.S.C. § 2254(d)(1)).

[94]*Parker*, 132 S. Ct. at 2155 (citing *Darden v. Wainright*, 477 U.S. 168 (1986)).

[95]*Id*. at 2153 (quoting *Darden*, 477 U.S. at 181) (further citation omitted).

-20-

Case No. 1:11-cv-558
Gwin, J.

to" the defense's case, and whether the purported misconduct ultimately harmed or hurt the

petitioner's case.[96/]  The Court looks to these same considerations here and finds that the Ohio

appellate court could reasonably determine that the prosecutor's remarks did not violate Gilbert's

due process rights.

> The state appellate court reasoned that
>
> even though the prosecutor improperly expressed his personal opinion during closing
> argument, he was arguably commenting on what the evidence and testimony
> revealed.  We further recognize that the trial court instructed the jury that their sole
> concern was to determine the facts and whether they proved the offenses under the
> indictment.  The court also instructed the jury that the arguments of counsel were not
> evidence and could not be used in determining the facts.  Finally, when considering
> the entire record in this case, we cannot say that, absent the remarks of the
> prosecutor, the jury verdict would have been different in light of the evidence
> presented at trial.  Accordingly, we find that the prosecutor's statements during
> closing argument did not prejudice Gilbert or deny him a fair trial.[97/]

As an initial matter, Gilbert's objection to the Report and Recommendation centers on

remarks tending to urge conviction for aggravated murder and not murder.  Thus, the statement

centering on the authenticity and believability of the 9-1-1 tape, is of little moment.  The same is

true of the final remark in question—that the gun was black and silver like a gun of the same make

and model that was admitted into evidence.  These remarks would tend to center on whether Gilbert

was the killer—not factors relevant to aggravating circumstances.

Yet, even considering these remarks, the Court finds that the state appellate court's

determination was reasonable.  Some of the statements of which Gilbert complains—for example

the prosecutor's statement that he is a "pretty violent guy"—may be improper.  But Gilbert does not

show that any of these comments touched other specific rights.  And Gilbert does not suggest that

---

[96/] *Darden*, 477 U.S. at 181-83.

[97/] *Gilbert*, 2009 Ohio 463 at *9.

Case No. 1:11-cv-558
Gwin, J.

these remarks misstated or manipulated the evidence, except with regard to the description of the gun.

Ultimately, this Court reviews Gilbert's claim to determine whether the state court was unreasonable in finding that any purported errors did not amount to a denial of due process. Considered in this light, the Court finds the Ohio appellate court's determination reasonable. The court of appeals could find the jury instructions sufficiently allayed any damage done by any improper remarks.[98] The trial court defined evidence and instructed the jury that "[a]nything else which any of the attorneys has said during this trial is not evidence, and may not be used as evidence in determining what the facts are.[99] The Court finds the state appellate court's conclusion—that the jury followed this instruction—reasonable.

**G. Four, Five, Nine, and Eleven: Ineffective Assistance of Counsel, Procedural Default, Post-Arrest Silence, Disjunctive Indictment, and Particularized Unanimity**

Gilbert next says that he received ineffective assistance of counsel "when counsel failed to object to the admission of his post-arrest silence, failed to object to deficiencies in the indictment," failed to seek unanimity in the jury instructions, and failed to object to the prosecutor's closing argument.[100] By procedural rule, Ohio requires contemporaneous objection. Gilbert says that these errors also serve to excuse his procedural default on these issues and permit this Court to evaluate the underlying merits of his claims.

To qualify for habeas corpus relief based on the ineffective assistance of counsel, *Strickland v. Washington* requires two showings:

---

[98]/*Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[J]uries are presumed to follow their instructions.").

[99]/[Doc. 9-36 at 131.]

[100]/[Doc. 1 at 5.]

-22-

Case No. 1:11-cv-558
Gwin, J.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[101]

Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[102]

Additionally, a petitioner can overcome procedural default of an issue by showing both cause for, and prejudice resulting from the default.[103] Ineffective assistance of counsel qualifies as cause to excuse the procedural default of a particular claim.[104]

### 1. Ground Post Arrest Silence

Gilbert says that prosecutors violated his Fifth Amendment rights by allowing testimony that Gilbert did not say anything after being arrested and that his trial counsel was ineffective for failing to object.[105] The Warden says that the comments were minor and says Gilbert's silence was not used against him because the prosecution never asked the jury to draw any adverse inference from Gilbert's silence, and that Gilbert received effective assistance from his trial counsel.[106] The Magistrate Judge recommends that Gilbert's trial counsel was not unconstitutionally ineffective, and

---

[101]*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[102]*Id.* at 694.

[103]*See Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).

[104]*See Murray v. Carrier*, 477 U.S. 478, 492 (1986).

[105][Doc. 1 at 5.]

[106][Doc. 9 at 35.]

-23-

Case No. 1:11-cv-558
Gwin, J.

thus Gilbert cannot excuse his procedural default so as to present this claim on the merits.[107]/ Gilbert

objects.[108]/

     At trial, prosecutors asked FBI Agent Michael Depsquale

Q.    And you indicated you arrested him.  Did you have any problem when you arrested him?

A.    No.

Q.    What if anything did he say?

A.    Nothing.

Q.    And were you able to confirm his identity as Laurice Gilbert?

A.    Yes.

Q.    Okay. So he confirmed that he was, in fact, Laurice Gilbert?

A.    Yes.

Q.    All right. And do you see that person that you arrested back on April 19th of 2007 in Los Angeles in the courtroom?

A.    Yes.[109]/

     Even assuming, *arguendo* that this testimony was improper, this single response was not so

egregious as to deny the defendant a fundamentally fair trial in violation of *Strickland*.  Had

prosecutors repeatedly harped on Gilbert's silence as evidence of his guilt, such remarks might have

influenced the result.  But there is no reasonable probability that this single response, recounted as

part of the events Gilbert's arrest, changed the outcome of Gilbert's trial.  Accordingly, Gilbert's

---

[107]/[Doc. 15 at 33.]

[108]/[Doc. 18 at 6.]

[109]/[Doc. 9-34 at 61-62.]

Case No. 1:11-cv-558
Gwin, J.

counsel was not unconstitutionally ineffective, and this claim is not saved from Gilbert's default.

*2. Disjunctive Indictment and Jury Instruction*

Gilbert also says that his trial counsel rendered unconstitutionally ineffective assistance by failing to object to the disjunctive nature of the indictment and by failing to request a jury instruction that required unanimity as to what particular offense conduct supported the conviction.[110/]

Confusingly, Gilbert combines these two grounds in his traverse.  He seems to argue that the jury charge combined with the indictment to allow the "jury to convict without a sufficient meeting of the minds regarding the offense conduct."[111/]  Gilbert says that Counts One, Two, and Three of the indictment "each alleged . . . that the offenses could be committed in a myriad of different ways," and, so the jury should have been instructed that they "needed to agree on that particular means."[112/]  Gilbert appears to argue that his attorneys should have raised objections under both federal and state law.  He says that "[w]ithout a jury instruction to guard against a lack of unanimity, there is a denial of due process" under *Richardson v. United States*.[113/]  He says that had counsel requested proper jury instructions, "State law would have required that a specific instruction been given" under *State v. Johnson*.[114/]  The Warden responds that Gilbert defaulted these arguments, and that the Sixth Amendment's guarantee of juror unanimity does not apply to the states.[115/]

First, Gilbert does not establish that his counsel had a viable objection under federal law and

---

[110/][Doc. 1 at 5; Doc. 14 at 7.]

[111/][Doc. 14 at 7.]

[112/][Doc. 14 at 8.]

[113/]526 U.S. 813 (1999).  [Doc. 14 at 9.]

[114/]545 N.E.2d 636, 643-46. (Ohio 1989) [Doc. 14 at 9.]

[115/][Doc. 9 at 23.]

Case No. 1:11-cv-558
Gwin, J.

thus cannot satisfy *Strickland*'s deficient performance requirement. *Richardson*, on which Gilbert

relies, applied to federal criminal cases. The Court explained that "[t]he question before us arises

because a federal jury need not always decide unanimously which of several possible sets of

underlying brute facts make up a particular element, say, which of several possible means the

defendant used to commit an element of the crime."[116] Contrary to Gilbert's assertion, the Court

answered this question in terms of statutory interpretation, not constitutional law.[117] As Gilbert

points out, *Richardson*, relied on *Schad* to make a constitutional avoidance argument. But the

portion of *Schad* that Gilbert cites was not a part of the holding, but merely a plurality opinion.[118]

Thus Gilbert's ineffective assistance of counsel claim hinges on his contention that any competent

counsel would have raised a novel objection based on a plurality opinion. This assumption goes too

far. The decision not to raise such an objection did not render Gilbert's counsel so deficient as to

barely qualify as functioning as counsel. Accordingly, the Court finds that Gilbert's counsel was

not unconstitutionally ineffective. Because he does not show an ineffective counsel, Gilbert is not

excused his default of this claim.

Gilbert also says that effective counsel would have requested an instruction "that [the jury]

must unanimously concluded that the defendant committed acts falling within one [distinct

conceptual] grouping in order to reach guilty verdict."[119] He says that "State law would have

---

[116] *Richardson*, 526 U.S. at 817 (1999).

[117] *Id.* at 824.

[118] *Id.* at 819-20 (citing *Schad v. Arizona*, 501 U.S. 624, 632-33 (1991) (plurality opinion))

[119] [Doc. 14 at 9.]

Case No. 1:11-cv-558
Gwin, J.

required that a specific instruction be given."[120]  Gilbert applies this analysis to Count Two and Count Three, noting the number of possible permutations of means that could satisfy each overall offense.  In response, the Warden says that the indictment and instructions were not defective under Ohio law, because they specified alternative means of committing the same offense, and thus Ohio law does not require specific unanimity.[121]

Once again, the Court has difficulty understanding Gilbert's argument. *Johnson* indeed held that "if a single count can be divided into two or more 'distinct conceptual groupings,' the jury must be instructed specifically that it must unanimously conclude that the defendant committed acts falling within one such grouping in order to reach a guilty verdict."[122]  But the Ohio Supreme Court also held that alternative means do not qualify as alternative elements so as to warrant such an instruction:

> In the case sub judice, appellant suggests that he could have been convicted by less than a unanimous jury since some of the jurors could have found that he murdered Eunice Graster while committing aggravated robbery, some that he murdered her while attempting to commit aggravated robbery, some that he murdered her while fleeing immediately after committing aggravated robbery, and some that he murdered her while fleeing immediately after attempting aggravated robbery.
>
> However, even assuming arguendo that the jury had split on the alternatives offered by the specification, each juror still would have agreed that the appellant had murdered Eunice Graster in conjunction with at least attempting to commit aggravated robbery, and this alone would have been adequate to sustain the conviction.  We believe the jury was faced with a 'single conceptual grouping of related facts,' rather than two or more 'distinct conceptual groupings.' . . . Essentially, the alternatives presented to the jury and charged in the specifications were not conceptually distinct.  Therefore, a 'patchwork' or less than unanimous

---

[120]/[Doc. 14 at 9.]

[121]/[Doc. 9 at 27.]

[122]/*Johnson*, 545 N.E.2d at 644.

-27-

Case No. 1:11-cv-558
Gwin, J.

verdict was not possible.[123]

This complaint might have some sway against Count two given the two aggravated robbery charges.  But Gilbert's complaints against Count Two are moot since the Court has already found this Count defective because Gilbert did not receive a jury determination beyond a reasonable doubt of all of the requisite elements.

When applied to Count Three's aggravated robbery charges, Gilbert's argument is less persuasive.  The jury had a single conceptual grouping: Gilbert's gunpoint demands for money. Gilbert does not propose the distinct groupings of fact that would make *Johnson* applicable. Accordingly, his counsel did not perform deficiently by failing to raise an objection under *Johnson*, and Gilbert fails *Strickland*'s first prong.  Having failed to show his attorney was ineffective, Gilbert's complaint about juror unanimity is procedurally defaulted.

### 3. Failure to Object to Remarks in Closing Argument

Gilbert also says in passing that his trial counsel "failed to object to pervasively improper remarks in closing argument."[124]  The Court has already considered these remarks in Part F and determined that the comments were minimal, not unduly prejudicial and the trial court's limiting instruction mitigated any damage caused by any improper remarks.

### 4. Conclusion

For these same reasons—that Gilbert has established neither deficient performance nor resulting prejudice—for each aspect of his ineffective assistance of counsel claim, his ineffective assistance of counsel claim fails.

---

[123]*Id.* at 644-45.

[124][Doc. 1 at 6.]

-28-

Case No. 1:11-cv-558
Gwin, J.

## IV.  Remedy

The Court vacates the jury's guilty verdict as to aggravated murder as charged in Count Two only.  Gilbert's convictions for aggravated murder as charged in Count One of the indictment and aggravated robbery as charged in Count Three of the indictment remain undisturbed.  Gilbert was initially sentenced to concurrent terms of thirty-three years to life on Counts One and Two.[125]  On direct appeal, the Ohio appellate court determined:

> [A] defendant who kills only one victim and is convicted of two aggravated murder counts may be sentenced on only one count. . . . Accordingly, we find the trial court should have merged the aggravated murder convictions for sentencing.  Because Gilbert should have been convicted of only the one offense, and hence the outcome of the proceeding clearly would have been different, we find that a plain error occurred.[126]

On remand, the Common Pleas Court said "Counts 1 and 2 are merged for purposes of sentencing," but did not modify Gilbert's sentence of thirty-three-years to life on these counts.[127]

Generally, merger means that the greater offense absorbs the lesser offense.[128]  Under Ohio law, merger is not equivalent to the imposition of concurrent sentences on both counts.[129]  Instead, "[w]hen a defendant has been found guilty of offenses that are allied offenses, [Ohio Revised Code §] 2941.25 prohibits the imposition of multiple sentences. . . . Therefore, a trial court must merge the crimes into a single conviction and impose a sentence that is appropriate for the offense chosen

---

[125][Doc. 9-25.]

[126]*Gilbert*, 2009-Ohio-463 at *10.

[127][Doc. 9-25.]

[128]*See Black's Law Dictionary* (9th ed 2009); merger.

[129]*State v. Darmon*, 950 N.E.2d 512, 515 (Ohio 2011).

-29-

Case No. 1:11-cv-558
Gwin, J.

for sentencing."[130]  Typically, under Ohio law, "the state . . . determines which offense to pursue at sentencing and . . . there is nothing indicating that the General Assembly intended to remove the state's discretionary power upon reversal for an allied-offenses sentencing error."  Thus, typically, "the appellate court's remand requires the trial court to conduct a new sentencing hearing.  At the hearing, the trial court must accept the state's choice among allied offenses, 'merge the crimes into a single conviction for sentencing, and impose a sentence that is appropriate for the merged offense.'"[131]

In this case, the state never chose between Counts One and Two for merger purposes, and both offenses were equally serious—aggravated murder.  Thus, the sentence would not change based on the state's election between the merged offenses.  Complicating this ambiguity, the sentencing court imposed a single sentence—thirty-three years to life— on the merged offense of Counts One and Two.  Thus Gilbert now has a single conviction—aggravated murder.  Initially, this conviction was supported by two guilty verdicts.  Under Ohio law, however, "a 'conviction' consists of a guilty verdict and the imposition of a sentence.'"[132]  Based on this order, Gilbert's conviction now rests on a single verdict.  And since conviction requires only a sole guilty verdict, no resentencing is necessary.  Accordingly, while the Court vacates the guilty verdict on Count Two, it does not vacate the sentence of thirty-three years to life imposed on the merged offense.

## V.  Conclusion

Gilbert senselessly shot and killed a man over approximately $2000 that the man had hidden

---

[130]*Id.*

[131]*Id.* (further citation omitted).

[132]*State v. Wilson*, 951 N.E.2d 381, 385 (2011).

Case No. 1:11-cv-558
Gwin, J.

in his underwear.  But Gilbert must be convicted beyond a reasonable doubt of each element of every offense charged.  However improbable it is that Gilbert is not guilty of felony murder, that determination is the provenance of a jury.  And the Ohio appellate court's decision vacating one of Gilbert's aggravated robbery charges requires that a jury reevaluate his felony murder charge.

For the foregoing reasons, this Court **CONDITIONALLY GRANTS IN PART AND DENIES IN PART** petitioner Gilbert's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Gilbert's guilty verdict for aggravated murder as charged in Count Two of the indictment is vacated and set aside.  Gilbert's challenges to his Count One conviction and to his Count Three robbery conviction do not succeed.  But, Gilbert must be retried on Count Two within 200 days of this Order.  The Court **DENIES** Gilbert's petition as to all other claims.

Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could be taken in good faith as to grounds five and eleven (ineffective assistance of counsel for failure to request a jury instruction of particularized unanimity) and six (requirement of jury determination beyond a reasonable doubt on all elements of Count Two) and issues a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b).

IT IS SO ORDERED.


Dated: June 5, 2013                                    s/         *James S. Gwin*
                                                       JAMES S. GWIN
                                                       UNITED STATES DISTRICT JUDGE